Bluett Marshall v. The State.

No. 3482.   Decided March 31, 1915.

**1.—Murder—Continuance—Newly Discovered Testimony—Practice on Appeal.**

Where the judgment was reversed and the cause remanded on other grounds, the question of refusing a new trial on account of overruling the application for continuance and of newly discovered testimony need not be considered.

**2.—Same—Bystander's Bill—Argument of Counsel.**

Where defendant refused to accept the bill of exceptions as qualified by the court and proved up his .bill by three witnesses under article 2067, Revised Statutes, and there was no contesting affidavit, and the trial judge having failed to make out and file a bill of exceptions as he viewed the matter, the bystander's bill as thus prepared must be considered, and a letter of the district attorney in which he contended that the bill did not correctly quote his language can not be considered on appeal.

**3.—Same—Argument of Counsel—Reputation of Defendant.**

Where, upon trial of murder, defendant took the witness stand, but did not put in issue his reputation as a peaceable and law-abiding citizen, there was no error in sustaining an objection to the attempt of the district attorney to get before the jury testimony that some years before the homicide, and in no way connected therewith, defendant had been drunk and was tied to a tree at a picnic, etc., and it was reversible error in the argument of the district attorney to allude to this testimony which had been ruled out. Following Wright v. State, 63 Texas Crim. Rep., 429.

**4.—Same—Argument of Counsel—General Reputation.**

Upon trial of murder, it was reversible error to permit the district attorney in his closing argument to say that, if he were permitted, he would be able to show that the reputation of the defendant for peace was not good, but bad; the reputation of defendant for peace and order not having been placed in issue. Following Johnson v. State, 17 Texas Crim. App., 565, and other cases.

**5.—Same—Rule Stated—Reputation of Defendant.**

It has been uniformly held by this court that evidence of reputation for bad character for peace is inadmissible against the defendant, unless it is an issue in the case under some well known rules of law.

**6.—Same—Argument of Counsel—Rule Stated.**

When counsel, in his argument, states and discusses some fact which has not been proved and which it would not have been permissible to have been proved and which was calculated to be hurtful and harmful to the person on trial, the case should be reversed. Following Davis v. State, 54 Texas Crim. Rep., 236.

**7.—Same—Murder—Charge of Court.**

Where, upon trial of murder, the evidence offered in behalf of the State authorized the submission of the issue of murder and would sustain a verdict of such offense, there was no error.

**8.—Same—Reasonable Doubt—Charge of Court.**

It is not incumbent on the court to define the meaning of reasonable doubt; the language of the statute needs no amplification or attempt on the part of the court to enlarge or explain these words. Following Thompson v. State, 37 Texas Crim. Rep., 227, and other cases.

Appeal from the District Court of Angelina. Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The main State's witness substantially testified as follows: That on the night of the homicide he had been opossum hunting with defendant and deceased, the latter being defendant's brother-in-law; that they had all been drinking freely from a bottle of whisky, and before proceeding very far, concluded to return and go to the house of deceased; that while there some wordy altercation occurred between defendant and deceased, who had, up to that time, been friendly; that the witness concluded to go to his home with his wife and children; that defendant said, "Hold on; I am going that way," and followed them; that about that time defendant and deceased again exchanged some words about some gun shells, defendant saying when he left, "I don't think there is any need of us having any 'rucus,'" when deceased said, "I want to see you a minute," when defendant stopped, the witness and his family going on; that shortly after the witness and his family reached their home, someone called him to bring a lantern, but witness could not recognize whether this was defendant or the deceased; that the witness went out to them with a lantern, near his cow lot, when he heard the defendant say, "Stop; do not come on to me," and the witness saw the deceased coming around a treetop and had a quart of whisky in his right hand, holding it out in front of him and facing the defendant; that about that time the defendant said, "You know damned well you done it," to which deceased replied, "You lying son-of-a-bitch, I did not do it," when defendant raised up and shot, the parties being about five or six steps apart; that when the first shot fired deceased staggered somewhat and said, "Yes, I done it. Don't shoot, I done it." That defendant said, "Yes, damn you, I know you done it"; that it seemed to the witness that there were two or three shots fired after deceased fell; that witness was certain that four shots were fired in all, and as well as he remembered, there was only one shot fired, or probably two, before the deceased fell; that defendant continued to advance towards the deceased during the time he was shooting; that when defendant quit shooting he walked on up to deceased, saying, "God damn him. I ought to finish him up and get him out of misery," when the witness said, "Lord have mercy, do not shoot him any more," when defendant walked towards the witness, but stopped and said, "God damn it, I will just fix things while I am at it"; that defendant then turned around and walked back to where deceased was lying, caught hold of his leg, turned him over on his back, and leaned down where deceased's pockets were in his pants, when the witness turned answering the call of his wife and started back to his house; that about that time defendant said, "I had it to do"; that when witness thought defendant had gone, the latter came up to the witness putting his hand on witness' shoulder and said, "We just as well fix this before we go any further, you have got to swear that you saw him with his

knife drawn back that way, and that he said he was going to cut my damned throat"; that witness never said anything; that defendant said, "You must swear this and help me out—you are going to do it," and pulled his gun down off his shoulder, when witness said, "I will do all I can," etc.

This witness also testified, among other things, that he saw a knife (which was identified as the knife of the deceased) sticking in the ground there; that it was sticking in the ground that deceased had scuffled over and twisted over trying to get behind the stump; that deceased had scrambled all over that ground after he fell where the knife was sticking when the witness and others got down there. The witness also testified that a bottle of whisky was there near the body of deceased. This witness also testified that when the deceased advanced upon defendant he had the bottle in his right hand, and if the deceased had any knife or anything of that sort in his left hand, the witness did not see it; that some time after the killing the defendant called witness aside and said: "My life lies in your hands, and I want you to help me out of this, I have not got much, but when I get out of this I will turn it all over to you, if you will get me out of this," to which witness replied that he would do his best.

The defendant testified substantially that after he left the house of deceased following the State's witness and his family, deceased followed after them; that he walked ahead of the defendant and after a while turned and said, "You damned lying s-b-ch, you never put that whisky there," and about that time he and defendant had got nearly even with the cowpen of Munroe Davis, the above State's witness; that not being able to see anything, defendant called Munroe Davis and told him to bring a light out there; that just about that time deceased turned on defendant again and said, "You have got that whisky," defendant replying that he did not have it; that deceased made a step or two towards defendant and said, "You are a God damned liar and a son-of-a-b—ch"; that defendant told him to stop; that deceased then said, "I will cut your damned head off," and made a slash at defendant with the knife, when defendant shot him, but saw that he had missed, him and deceased was coming at defendant, when defendant again threw his gun up and began to shoot as fast as he could until deceased fell, when defendant turned to the witness, Munroe Davis, and said, "That was bad"; and the witness replied, "Yes, but you couldn't help it; I know you couldn't," and further said that his wife told witness she saw the knife as she came out of the door.

The defendant also showed that the main State's witness, Munroe Davis, shortly after the killing testified at a coroner's inquest, and that there was a material change in his testimony upon the final trial with reference to the knife and other matters, which was in conflict with defendant's testimony on the inquest trial; especially as to what had been said by the defendant and by said State's witness right after the killing.

The testimony is quite voluminous, but the above excerpt gives the

salient part of the evidence. This, in connection with the opinion of the court, is a sufficient statement of the case. The court charged upon murder, manslaughter and self-defense.

*W. J. Townsend, Jr.,* for appellant.—On question that the court's charge should have been confined to manslaughter: Marie v. State, 28 Texas, 698; Johnson v. State, 43 id., 612; Boyett v. State, 2 Texas Crim. App., 93; Miles v. State, 18 id., 156; Orman v. State, 24 id., 495; Baltrip v. State, 30 id., 545; Jackson v. State, 32 Texas Crim. Rep., 192; Barbee v. State, 50 id., 426.

On question of argument of counsel: Pollard v. State, 33 Texas Crim. Rep., 197; Turner v. State, 39 id., 322; Smith v. State, 55 id., 563; Stephens v. State, 20 Texas Crim. App., 255; Johnson v. State, 171 S. W. Rep., 1128.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of reasonable doubt: Massey v. State, 1 Texas Crim. App., 563; Bland v. State, 4 id., 15; Ham v. State, 4 id., 645; Abram v. State, 36 Texas Crim. Rep., 44.

On question of argument of counsel: Mercer v. State, 17 Texas Crim. App., 452; Battles v. State, 53 Texas Crim. Rep., 202; Tabor v. State, 52 id., 387; Reeseman v. State, 59 Texas Crim. Rep., 430, 128 S. W. Rep., 1126.

HARPER, Judge.—Appellant was convicted of murder and his punishment assessed at ten years confinement in the State penitentiary, from which judgment he prosecutes this appeal.

We do not deem it necessary to discuss those bills of exception which contended that the court erred in overruling his application for a continuance, and in refusing to grant a new trial on account of newly discovered testimony. The testimony will not be newly discovered on another trial, and if he desires the attendance of the witnesses on account of whose absence he sought a continuance, and those whom he says will testify to matters of which he was unaware, he can secure their attendance on another trial by proper diligence.

The most serious matter complained of in the record is presented in a bystander's bill. It is made to appear that the court refused to approve the bill as presented to him without qualifying same. This bill as qualified appellant refused to accept, and proved up his bill by three witnesses under article 2067, Revised Statutes. The trial judge did not, as the law provides, when counsel would not agree to the corrections or qualifications, make out and file a bill setting forth the matter as viewed by the judge, but all we have in the record is the bill as proven up by appellant. The district attorney did not controvert this bill by filing controverting affidavits in the court below, so the bill is before us uncontested. It is true the district attorney had written a letter to the Assistant Attorney General, which was filed with the papers, in which he contends that the bill does not correctly quote his

language, but this we can not consider. The law (art. 2067) has provided the way in which such contest must be made, and as no contesting affidavits were filed we must take the bill as presented in this record as correctly presenting the matter. In the bill it is shown that during the closing argument of the district attorney he said: "It is passing strange that in every murder case that the defendant invariably brings in testimony and attacks the reputation of the deceased for peace and violence, and in this case they have thus attacked the dead man's reputation. Under the law, the State cannot put in a defendant's reputation by evidence before the jury, unless the defendant himself invites it by attempting to show a good reputation for peace and violence, which this defendant has not undertook to do, and he dare not do it, for we would be able to show that his reputation for peace and violence was not good but bad, and the jury already had enough before them about his being drunk and being tied to a tree at a picnic where his neighbors had assembled together to enjoy the day among themselves to let the jury know that the defendant's reputation for peace and violence is not good but bad."

While it is true that defendant took the stand as a witness, he did not put in issue his reputation as a peaceable and law-abiding citizen. It is contended that as there was evidence in the record that on a prior occasion at a picnic he was drunk and was tied to a tree, this furnished some basis for the remark used. Unfortunately for the State's contention, however, the record discloses that while the district attorney did attempt to get such testimony admitted, yet appellant's objection thereto was properly sustained by the court, and such facts were not admitted in evidence. At the time of this alleged occurrence appellant was not even acquainted with deceased; it was some seven years prior to this difficulty, and even if he was drunk on that occasion and was tied to a tree by the sheriff, if such testimony had been admitted on the trial of the case, over objection of appellant, it would have been in and of itself such error that would necessitate a reversal of the case under the evidence before us. This question is discussed very thoroughly in Wright v. State, 63 Texas Crim. Rep., 429, and it is held that such testimony is inadmissible, and on another trial there should be no effort made to get such evidence before the jury. Appellant was on trial charged with killing Virgil Westmoreland. Any and all facts and circumstances connected with that affair, or that would shed light on the action of the parties, should be admitted, but acts of improper conduct on the part of appellant, if he was guilty thereof, which involved no moral turpitude and in which deceased was in no way connected, should not be sought to be injected in the trial. But had such evidence been in the record it would not have justified the district attorney in saying that, "If the defendant had placed his reputation for peace and violence in issue, which he dare not do, he (the district attorney) *would be able to show that his reputation for peace and violence was not good but bad."* Had the State offered sworn testimony that the reputation of the appellant in that respect was bad, when he had not

put his reputation in issue, the court would not have admitted it, and if sworn testimony would not be admissible, certainly the district attorney ought not to be permitted to state to the jury in his closing argument that he could have proven his reputation was bad if he had been permitted to do so. In Johnson v. State, 17 Texas Crim. App., 565, the court held in an opinion by Judge White, "it was error to permit the prosecution to investigate defendant's general reputation as a 'law-abiding man' when he had not put it as such in issue." In Guajardo v. State, 24 Texas Crim. App., 603, Judge Hurt says, "The admitting of such testimony when defendant has not placed his reputation in issue, whether intended or not, is an outrage upon the rights of the accused." In Felsenthal v. State, 30 Texas Crim. App., 675, Judge White reiterates the rule, "Until a defendant in a criminal case has himself put his character in issue, the State has no right to introduce testimony showing his bad character." The citation of authorities could be continued down to the present day and it has been uniformly held that evidence of reputation of bad character for peace is inadmissible unless it is an issue in the case under some of the well known rules of law. When the remarks of counsel dehors the record will and when they will not be ground for reversal of a case is ably discussed by Judge Ramsey in the case of Davis v. State, 54 Texas Crim. Rep., 236, and the authorities reviewed, and it may be said to be there correctly held, that when counsel in his argument states and discusses some fact which had not been proven, and which it would not have been permissible to have been proven, which is calculated to be hurtful and harmful to the person on trial, the case should be reversed. In the American & English Encyclopedia of Law, vol. 5, p. 352, it is said: "The court should not tolerate argument of counsel outside of the evidence impeaching or fortifying the character or credibility of a defendant or witness in a case," citing authorities from almost every State in the Union, among them being the Davis case, supra, and other cases from this court, and cases rendered by the Supreme Court and the Courts of Civil Appeals.

The complaint that the court erred in submitting the issue of murder in his charge is without merit. The evidence offered in behalf of the State authorizes a submission of that issue, and would sustain such a verdict if the jury so finds. Neither was it incumbent on the court to define the meaning of the words "reasonable doubt." It has been frequently held that the language of the statute needs no amplification or attempt on the part of the court to enlarge or explain them. Thompson v. State, 37 Texas Crim. Rep.; 227; Hurley v. State, 35 Texas Crim. Rep., 282; Fury v. State, 8 Texas Crim. App., 471; Massey v. State, 1 Texas Crim. App., 563, and other cases cited in section 934, White's Ann. Procedure.

The other bills in the record, in our opinion, present no error, but on account of the errors hereinbefore pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*