**Mark Anthony TONEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–94–01014–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 23, 1999.

---

Kurt B. Wentz, Houston, for appellant.

Alan Curry, Houston, for appellee.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and LEE.[1]

## OPINION ON REMAND

MAURICE E. AMIDEI, Justice.

Mark Anthony Toney appeals his conviction by a jury for delivery of cocaine, less than 28 grams. The trial court assessed his punishment at forty years imprisonment, enhanced by two prior felony convictions. On original submission, we reversed and remanded this case because the trial judge's omission of the required definitional jury instruction on "reasonable doubt" mandated automatic reversal without harm analysis under *Reyes v. State,* 938 S.W.2d 718 (Tex.Crim.App.1996). *Toney v. State,* 942 S.W.2d 750, 751–52 (Tex. App.-Houston[14th Dist.] 1997). The State obtained discretionary review and the court of criminal appeals vacated our decision and remanded the cause to this court for further proceedings in light of *Mann v. State,* 964 S.W.2d 639 (Tex.Crim.App. 1998). *State v. Toney,* 979 S.W.2d 642 (Tex.Crim.App.1998). *Mann* was decided subsequent to our opinion on original submission, and held that when the jury is given a partial or substantially correct charge on reasonable doubt, then any error therein is subject to a harm analysis. *Mann,* 964 S.W.2d at 641–42. If there is a total omission of the instruction on reasonable doubt, such error·defies meaningful analysis by harmless error standards. *Id.* On remand, we are to determine if appel-

---

1. Senior Justice Norman Lee sitting by assignment.

lant has suffered "egregious harm," and if we find he has not, we should then address the remaining points of error originally brought by appellant. In four points of error, appellant contends: (1) the trial court abused its discretion in refusing to allow his mother to testify at the guilt/innocence stage because she violated rule 614, Texas Rules of Evidence ("The Rule"); (2) appellant was denied effective assistance of counsel; (3) the trial court erred in allowing improper jury argument by the prosecutor; (4) the trial court erred in failing to include an instruction on "reasonable doubt" in the court's charge at the guilt/innocence phase of appellant's trial. We affirm.

## I. FACTUAL BACKGROUND.

On January 28, 1994, Officers Walker (Walker) and Acker were working undercover buying narcotics from suspected drug dealers. Walker parked their unmarked 1979 Lincoln next to a Ford Escort in a parking area in front of Shots One Stop Grocery. Michael White ran up to the Lincoln and asked Walker "what he was looking for." Walker told White he was looking for a "twenty," which was street slang for a quarter gram of crack cocaine. White walked around the front of the Lincoln, and stopped by the passenger side of the Ford Escort. Appellant was sitting in the passenger seat of the Ford, and no one was sitting in the driver's seat. Appellant took a small object from a white tissue paper, handed it to White, and White carried the object in his hand directly to Walker. White gave Walker the crack cocaine, and Walker gave White a previously photocopied twenty dollar bill. White carried the bill back to the Ford Escort, and handed the bill to appellant. Walker radioed the raid team, and Officer Hrncir (Hrncir) arrived in less than a minute and arrested appellant and White. After Walker pointed out appellant and White to Hrncir as the suspects, Walker drove away to field test the rock for cocaine. Hrncir retrieved the twenty dollar bill from under the passenger seat in appellant's car, the tissue that held the rock of crack cocaine, a plastic baggie in the tissue containing "crumbs" of crack cocaine, and delivered them to Walker later that night. After Hrncir had searched the car, he noticed a baby boy in the back seat of the car. It is unknown whose child it was, or why the child was in appellant's car. Walker also stated there was a baby boy in the car, but he did not make a notation of this on his offense report.

Appellant did not testify, but produced three witnesses to prove his defense that he had nothing to do with the delivery. Daron Chapman, a friend, stated appellant was following him in the Ford Escort, and they were on their way to Chapman's house. Chapman observed appellant pull into the parking lot in front of the store, and stop. Chapman parked a short distance away and observed police officers come to appellant's car about two minutes after he had parked and arrest him. Chapman said there was no baby in the car with appellant. Chapman stated nothing concerning White's activities at the scene.

Michael White, appellant's co-defendant, admitted that he was a drug addict and homeless. White stated he was partially "high" on cocaine and three, 40 oz. cans of beer at the time the drug transaction was made. White said he was standing in front of the store, saw Walker's Lincoln pull in, and went over and asked the officers what they wanted. Walker told White he wanted forty dollars worth of dope. White approached a man known as "James," and bought the crack cocaine, delivered the dope to Walker, took the twenty dollar bill and walked away. White then saw appellant, and walked over to him and asked him for change for the twenty dollar bill. White saw the police, dropped the twenty dollar bill in appellant's Ford, and walked away. The officers then arrested White and appellant. White testified that there was no baby in appellant's car.

Harry West stated he saw White come out of the store at the same time appellant drove up and parked. West stated that two minutes later, the police arrived and arrested appellant. West said there was no baby in appellant's car.

## II. DISCUSSION.

**A. The failure to include definitional instruction on "reasonable doubt."** The court of criminal appeals remanded the case to this court to determine if appellant suffered "egregious harm" as a result of the trial court's partial failure to instruct the jury on "reasonable doubt." *Toney,* 979 S.W.2d at 645.

**1. Standard of Review.** The standard of review for errors in the jury charge depends on whether the defendant properly objected. *Mann v. State,* 964 S.W.2d at 641; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984)(opinion on reh'g); *Hines v. State,* 978 S.W.2d 169, 174 (Tex.App.-Texarkana 1998, no pet.). If a proper objection was raised, reversal is required if the error "is calculated to injure the rights of the defendant." *Almanza,* 686 S.W.2d at 171. The court of criminal appeals has interpreted this to mean *any* harm, regardless of degree, is sufficient to require reversal. *Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim.App.1986). If a defendant does not object to the charge, reversal is required only if the harm is so egregious that the defendant has not had a fair and impartial trial. *Almanza,* 686 S.W.2d at 171. Errors which result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Id.* at 172. If the jury charge contains error, the reviewing court must conduct a harm analysis considering the following four factors: (1) the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial

as a whole. *Abdnor v. State,* 871 S.W.2d 726, 733 (Tex.Crim.App.1994); *Almanza,* 686 S.W.2d at 171.

Because the appellant did not preserve the jury charge error, resolution of this case requires an egregious harm analysis. *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996). Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis. *Id.*

**2. Harm Analysis.**

**a. The jury charge.** The full text of the instruction on "reasonable doubt" that is required by *Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim.App.1991) to be submitted to the jury in all criminal cases is:

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. *The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.*

*The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.*

*It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.*

*A "reasonable doubt" is a doubt is a doubt based on reason and common*

*sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.*

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him *and say by your verdict "Not guilty"*. [emphasis added].

*Geesa,* 820 S.W.2d at 162.

In this case, the trial court omitted the above emphasized portions in its jury instruction. The jury instruction in this case provided, in pertinent part:

The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant.

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. In case you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him.

■ The trial court failed to include the *Geesa* instruction emphasized in the first paragraph that the defendant does not have to prove his innocence. Although the trial court separately instructed the jury that the defendant did not have to testify, and that his failure to testify cannot be taken as any "circumstance against him," *Geesa* mandates such an instruction, and the failure to include it is error.

The trial court failed to include the instruction emphasized in the first para-

graph that "the presumption of innocence alone is sufficient to acquit, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt...." The failure to include this instruction is error.

The *Geesa* requirement of placing the burden of proof on the prosecution (second paragraph) was substantially met by the trial court's first instruction ("[T]he burden of proof ... rests upon the State...."). Omitted from the trial court's instruction is the *Geesa* requirement that the prosecution must prove the defendant guilty "by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant." Although the trial court included a similar instruction as the first sentence in the second paragraph, it omitted the *Geesa* required second paragraph requiring "each and every element" be "proved beyond a reasonable doubt...." This omission was error.

Likewise, the failure to include the definitional instructions of "reasonable doubt," emphasized was error. The last sentence required by *Geesa* was included, with the exception of the emphasized portion "and you will say by your verdict 'Not Guilty.'" Because it is mandated by *Geesa* that this be included, and it was not included, the omission was error.

In spite of these errors, however, we find that the instruction given, taken as a whole, was a substantially correct charge. By failing to add the definitional provisions mandated by *Geesa,* the errors in the trial court's charge are all errors of omission 820 S.W.2d at 162. The second paragraph of the trial court's charge, with the exception of the last sentence tracks section 2.01, Texas Penal Code, thus partially complying with *Geesa,* 820 S.W.2d at 162 ("[T]he following definitional instruction on reasonable doubt combines the provisions of Section 2.01, V.T.C.A., Penal Code, and instructions used in the federal system."). The jury was thus properly informed of the presumption of innocence and the requirement that each element of the of-

fenses must be proved beyond a reasonable doubt under Texas statutory law. This instruction was sufficient to meet federal due process standards. *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). In *Victor*, the Supreme Court held:

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Cf. *Hopt v. Utah*, 120 U.S. 430, 440–441, 7 S.Ct. 614, 618–20, 30 L.Ed. 708 (1887). Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, see *Jackson v. Virginia*, 443 U.S. 307, 320, n. 14, 99 S.Ct. 2781, 2789, n. 14, 61 L.Ed.2d 560 (1979), the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Cf. *Taylor v. Kentucky*, 436 U.S. 478, 485–486, 98 S.Ct. 1930, 1934–1935, 56 L.Ed.2d 468 (1978). Rather, "taken as a whole, the instructions [must] correctly convey the concept of reasonable doubt to the jury." *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).

*Victor*, 114 S.Ct. at 1243.

Before *Geesa* it was well-established that "the language of the statute on reasonable doubt needs no amplification or attempt on the part of the trial court to explain the term." *Whitson v. State*, 495 S.W.2d 944, 946 (Tex.Crim.App.1973). Because "reasonable doubt" has a "commonly accepted meaning and [is] well understood by everyone," trial courts were not encouraged to submit any definition for the term. *Gallegos v. State*, 152 Tex.Crim. 508, 512, 215 S.W.2d 344, 346 (1948). *See also Marquez v. State*, 725 S.W.2d 217, 241 (Tex. Crim.App.1987) (citing numerous authorities); *Pierce v. State*, 159 Tex.Crim. 504, 505, 265 S.W.2d 601, 602 (1954); *Marshall v. State*, 76 Tex.Crim. 386, 387, 175 S.W. 154, 155 (1915); *Abram v. State*, 36 Tex. Crim. 44, 45, 35 S.W. 389, 390 (1896) ("It is not proper for the court to discuss what the reasonable doubt is. The jury is as competent to determine that as the court."). *See Paulson v. State*, 991 S.W.2d 907, 912 (Tex.App.-Houston[14th Dist.] 1999, pet. filed).

In *Paulson*, this court considered a jury charge in which the trial court instructed the jurors in the application paragraph that they could not could not convict appellant unless they were convinced of his guilt "beyond a reasonable doubt," but the trial court did not further define or explain the concept as required by *Geesa*. *Paulson*, 991 S.W.2d at 908–909. Because there was a *total* omission of the *Geesa* charge by the trial court, this court reluctantly found the error constituted "automatic reversible error" under *Reyes v. State*, 938 S.W.2d 718, 721 (Tex.Crim.App.1996). *Paulson*, 991 S.W.2d at 917. This court indicated that the harmless error rule should apply to the charge error in that case. *Id.* at 917. The reasons given by the *Paulson* court supporting their opinion that harmless error should apply to the charge error in that case were:

> The error appears in all respects harmless. First, the trial court's reliance on "reasonable doubt" without further amplification is logically and legally defensible. "Language that is within the comprehension of persons of ordinary intelligence can seldom be made plainer by further defining or refining." *Buel v. State*, 104 Wis. 132, 80 N.W. 78, 85 (1899). Second, juries in this state have comprehended the term for well over a hundred years with no additional instructions. It seems unlikely that they should abruptly lose their understanding of the concept. Third, the jury did not request a definition of reasonable doubt and there is nothing in the record to show the term was misunderstood. Were we free to conduct a harm analysis, we would have no difficulty doing so. The Court of Criminal appeals foreclos-

ed this possibility last year when it held that the omission of the definitional instruction on reasonable doubt, as mandated by *Geesa,* "defies meaningful analysis by harmless error standards." *See State v. Toney,* 979 S.W.2d 642, 644 (Tex.Crim.App.1998).

*Paulson,* 991 S.W.2d at 917 (footnote omitted).

In this case, the omissions are only partial, and the trial court's charge complies with the basic requirements of our statutory law and federal due process, as stated above. Although the omissions are technically error under *Geesa,* we fail to see these omissions affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected his defensive theory. Accordingly, we find that appellant has not been egregiously harmed by the wording of the jury charge itself.

**■ b. Does the jury charge error relate to a contested issue?** The second factor of *Almanza* requires a determination of whether the jury charge error related to a contested issue. The appellant's defense attempted to establish that he had nothing to do with the delivery of the cocaine as proved by the State. The State proved through the testimony of Officers Walker and Hrncir that appellant delivered the cocaine to White, White delivered the cocaine to Walker, Walker paid White $20.00, and White delivered the twenty dollar bill to appellant. The factual presentation was straightforward and simple, and the jury had only to be convinced of appellant's guilt "beyond a reasonable doubt." The trial court's jury charge explained clearly stated that the jury had to find appellant guilty of each element of the offense beyond a reasonable doubt. As we stated in *Paulson:* "[J]uries in this state have comprehended the term for well over a hundred years with no additional instructions. It seems unlikely that they should abruptly lose their understanding of the concept. Third, the jury did not request a definition of reasonable doubt and there is nothing in the record to show the term was

misunderstood." *Paulson,* 991 S.W.2d at 917. Although appellant contested his participation in the transaction, the issues concerned the credibility of the witnesses and the weight of their testimony. We find the omissions in the trial court's charge further defining "reasonable doubt" did not affect the jury's resolution of the contested issues. Such omissions did not affect the very basis of the case, deprived the defendant of a valuable right, or vitally affected his defensive theory. Accordingly, we find that appellant has not been egregiously harmed by the omitted instructions in the jury charge.

**■ c. Arguments of counsel.** The third factor of *Almanza* harm analysis is the jury argument. As it relates to the omission of a definition of "reasonable doubt," appellant alluded to a *Geesa* definition by asking the jury if they would "make the most important decision" in their personal lives based on the testimony of the two officers. Appellant also asked the jury if they would "rely on what you heard to buy a new house, invest in a new business, adopt a child, the most important of your personal affairs?" The State alluded to a *Geesa* definition stating: "And all the credible evidence in this case, the kind of evidence that you make important decisions on leads you to only one conclusion, and that is this defendant." Other than these remarks, the arguments were devoted to the issues of credibility and weight of the testimony. Jury arguments do not serve to instruct the jury on the law. *Hutch,* 922 S.W.2d at 173. Jury argument is never alone a controlling factor in an *Almanza* harm analysis. *Id.* at 174. As we have stated under the first two factors of our harm analysis, we find the omissions in the jury charge were not argued to the jury, and did not affect the very basis of this case, deprive the appellant of a valuable right, or vitally affect his defensive theory. The arguments were about which witnesses the jury wanted to believe, not about definitions of reasonable doubt. The jury chose to believe the State's witnesses

and disbelieve the appellant's witnesses. We fail to see how any additional instructions on reasonable doubt would have affected the jury argument or the jury's decisions. Appellant was not egregiously harmed by jury arguments.

**d. Any other relevant information revealed by the record of the trial as a whole.** The evidence of appellant's guilt was overwhelming. The limited defense by appellant's witnesses was not accepted by the jury; the jury was out only an hour and thirty minutes before finding appellant guilty as charged. We do not believe the additional definitions and instructions required by *Geesa* would have helped appellant at all, and we find appellant has failed to demonstrate he was egregiously harmed by their omissions. We overrule appellant's point of error four.

**B. Exclusion of a defense witness.** In point one, appellant contends the trial court abused its discretion in refusing to allow his mother to testify because she had sat in the courtroom during some portion of the trial in violation of rule 614, Texas Rules of Evidence ("The Rule").

Appellant's mother was sitting in the courtroom during a portion of the trial. Appellant's counsel called her as a witness after the State had rested its case. Appellant's counsel stated she "did not decide to call [her] as a witness until after [she] heard the testimony about the baby." The officers stated there was a baby boy in the back of the car. Appellant's witnesses stated there was no baby boy in the car. Appellant's counsel stated the sole reason she wanted appellant's mother to testify was to determine whether or not there was a baby in the car. Appellant's counsel did not attempt to exempt appellant's mother from rule 614 as (1) a party, (2) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (3) the victim in a criminal case. Appellant's counsel failed to give the trial court any reason or justification as to why this testimony was essential. In fact, no

showing was made that appellant's mother even knew anything about the presence of any baby in appellant's car. Appellant's counsel did not tell the trial court why the presence of a baby boy in the back of appellant's car would be "essential" to appellant's case. We find that appellant has not met his burden of proof in establishing that a witness's presence in court is in fact "essential." *Kelley v. State*, 817 S.W.2d 168, 171–172 (Tex.App.-Austin 1991, pet. ref'd). We find the trial court did not abuse its discretion in refusing to exempt appellant's mother from "The Rule." We overrule appellant's point of error one.

**C. Ineffective Assistance of Counsel.** In point two, appellant contends he received ineffective assistance of trial counsel at the guilt/innocence stage and punishment stage. Specifically, appellant contends the following acts of ineffectiveness by his trial counsel:

1. Punishment Stage. Trial counsel offered no evidence on behalf of appellant in mitigation of punishment. Trial counsel argued that appellant had only one kidney, was on a waiting list for a kidney, and received four hours of dialysis treatment three days a week. Appellant pleaded true to two prior felony drug convictions, and was sentenced to 40 years under section 12.42,(d), Texas Penal Code. The trial court advised appellant that the range of punishment for this offense was not more than 99 years or less than 25 years. On appeal, appellant contends his trial counsel was ineffective for not bringing more witnesses to testify about his physical condition in mitigation of punishment.

2. At the guilt/innocence stage, trial counsel failed to object to non-responsive answers to State's witnesses: (1) an officer testified that he had a lot of complaints about drug deals at the location where appellant was arrested; (2) an officer testified it was wrong for appellant to have his child "out there while he sold dope;" (3) Officer Walker testified that his partner on the date of the offense had been shot and could not be in court to testify; (4) an

officer stated he bought dope from store several times and observed same people there each time.

3. Trial counsel did not adequately question defense witnesses.

4. Trial counsel failed to object to the cross-examination of Michael White by the prosecuting attorney about his lifestyle (homeless, drug addict).

5. Trial counsel allowed appellant's mother to remain in the courtroom in violation of "The Rule." She was not allowed to testify as to the baby in the car which was a "material fact."

6. Trial counsel violated the attorney-client privilege by asking Michael White if he told his lawyer what appellant did or did not do; White answered that he said nothing to his lawyer.

7. Trial counsel asked improper questions of White "opening the door" to harmful cross-examination by the State concerning his criminal lifestyle.

8. Trial counsel failed to object to improper impeachment of witness White.

9. Trial counsel failed to object to improper jury argument.

10. Trial counsel failed to object to the failure of the trial court to include an instruction on "reasonable doubt" in the court's charge..

11. Trial counsel failed to object to the trial court charging the jury that appellant had prior convictions that could be used in assessing his credibility.

The U.S. Supreme Court established a two prong test to determine whether counsel is ineffective at the guilt/innocence phase of a trial. First, appellant must demonstrate that counsel's performance was deficient and not reasonably effective. Second, appellant must demonstrate that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Essentially, appellant must show (1) that his counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms, and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id; Hathorn v. State*, 848 S.W.2d 101, 118 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 932, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993). A reasonable probability is defined as probability sufficient to undermine confidence in the outcome. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App. 1992).

Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel's representation. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim.App.1992). Therefore, in determining whether the *Strickland* test has been met, counsel's performance must be judged on the totality of the representation. *Strickland*, 466 U.S. at 670, 104 S.Ct. 2052. The defendant must prove ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App. 1984). *Strickland* applies to ineffective assistance of counsel claims at noncapital punishment proceedings. *Hernandez v. State*, 988 S.W.2d 770, 773–774 (Tex.Crim. App.1999).

In any case analyzing the effective assistance of counsel, we begin with the presumption that counsel was effective. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994)(en banc). We assume counsel's actions and decisions were reasonably professional and that they were motivated by sound trial strategy. *Id.* Moreover, it is the appellant's burden to rebut this presumption via evidence illustrating why trial counsel did what he did. *Id.* In *Jackson*, the court of criminal ap-

peals refused to hold counsel's performance deficient given the absence of evidence concerning counsel's reasons for choosing the course he did. *Id.* at 772. *See also Jackson v. State,* 973 S.W.2d 954, 956–957 (Tex.Crim.App.1998) (inadequate record on direct appeal to evaluate that trial counsel provided ineffective assistance).

Appellant did not file a motion for a new trial, and therefore failed to develop evidence of trial counsel's strategy as was suggested by Judge Baird in his concurring opinion in *Jackson,* 877 S.W.2d at 772. *See Kemp v. State,* 892 S.W.2d 112, 115 (Tex.App.-Houston[1st Dist.] 1994, pet. ref'd) (generally, trial court record is inadequate to properly evaluate ineffective assistance of counsel claim; in order to properly evaluate an ineffective assistance claim, a court needs to examine a record focused specifically on the conduct of trial counsel such as a hearing on application for writ of habeas corpus or motion for new trial); *Phetvongkham v. State,* 841 S.W.2d 928, 932 (Tex.App.-Corpus Christi 1992, pet. ref'd, untimely filed) (inadequate record to evaluate ineffective assistance claim). *See also Beck v. State,* 976 S.W.2d 265, 266 (Tex.App.-Amarillo 1998, pet. ref'd) (inadequate record for ineffective assistance claim, citing numerous other cases with inadequate records to support ineffective assistance claim).

In the present case, the record is silent as to the reasons appellant's trial counsel chose the course she did. The first prong of *Strickland* is not met in this case. *Jackson,* 877 S.W.2d at 771; *Jackson,* 973 S.W.2d at 957. Due to the lack of evidence in the record concerning trial counsel's reasons for these alleged acts of ineffectiveness, we are unable to conclude that appellant's trial counsel's performance was deficient. *Id.*

Even if this record rebutted the *Strickland* presumption of sound trial strategy, appellant has not demonstrated that trial counsel's performance prejudiced the defense. We have found appellant was not harmed by the failure of the trial court to instruct the jury as required by *Geesa.* We have found that the evidence of appellant's guilt was overwhelming. Even with appellant's limited defense, the jury still found him guilty in one hour and thirty minutes. Thus, appellant has not shown a reasonable probability that but for counsel's alleged unprofessional performance, the result of the proceeding would have been different. *Strickland,* 104 S.Ct. at 2064. Therefore, appellant has not met the second prong of the *Strickland* test. *Id.*

Because appellant produced no evidence concerning trial counsel's reasons for choosing the course he did, nor did he demonstrate prejudice to his defense, we overrule appellant's contention in point of error two that his trial counsel was ineffective.

**D. Improper Prosecutorial Argument.** Appellant contends the prosecutor improperly advised the jury of his personal beliefs on the credibility or believability of a witness. Appellant concedes that no objection was made at trial but asks this court to consider such improper argument error. We decline to review this point. A defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996), *cert. denied,* 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997). We overrule appellant's point of error three and affirm the judgment of the trial court.