Affirmed and Memorandum Opinion filed June 21, 2007








Affirmed and Memorandum Opinion filed June 21, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00339-CR

____________

 

NELSON DEJESUS GOMEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 179th
District Court

Harris County, Texas

Trial Court Cause No. 1029602

 



 

M EM O R A N D U M  O P I N I O N

Appellant Nelson DeJesus Gomez challenges his conviction
for murder asserting that he was denied effective assistance of counsel. We
affirm. 

I.  Factual and Procedural
Background 








On June 5, 2005, around10:00 p.m., Enrique Leija was
standing outside his home waiting for a ride, when a yellow convertible pulled
up and fell partly into a drainage ditch, accidentally damaging the front of
the vehicle. Leija=s friend, Manuel Davila was a passenger in
the car and appellant was the driver. Davila introduced appellant as APelon.@ After drinking a
couple of beers and socializing, Davila and Pelon left in the convertible. 
Approximately three hours later, Elden Robles was driving home when he spotted
Davila stumbling down the stairs from his apartment.  Robles stopped his
vehicle and rushed over to Davila, who  had been shot at least twice.  As
Davila remained on the ground bleeding, he told Robles that APelon@ shot him and ran
away, and that he was scared of dying.  Robles called the police.  

Houston Police Officer J.C. Hamilton arrived at the scene
shortly thereafter.  Davila, still on the ground, again stated that APelon@ had shot him. 
Davila later died from three fatal gunshot wounds. 

A search of Davila=s apartment
yielded evidence of gunshots, as well as appellant=s cell phone and a
set of car keys.  The cell phone contained photographs of appellant. 
One of the detectives exited the apartment and activated the alarm button on
the set of keys.   A responsive noise came from a damaged yellow Ford Mustang
convertible.  The officers ran a search on the license plate number and found
that the vehicle was registered to appellant.  The officers drove to the
address listed on the vehicle registration. There, they were confronted by two
angry pit bull dogs that prevented access to the front door.  An unidentified male
heard the commotion and exited the house.  When the officers asked him if he
was Nelson Gomez, he responded that he was not but that Gomez was in the house,
and he would get him.   Appellant appeared and stated: AIt=s me. I am Nelson.
I=ve been waiting
for you to show up. . .Manuel started a fight with me. He had a gun and tried
to shoot me. I tried to get away. I got the gun and I think I shot him. I ran
out.@  In addition to
admitting he shot Davila, appellant also admitted that he owned the yellow
Mustang convertible. 

Appellant was charged with the offense of murder. He
pleaded not guilty. At his jury trial that followed, appellant gave a far
different version of the events than he gave to police on the day of the
murder.  








At trial, appellant testified that he met Davila at a
friend=s house about
three weeks before the incident.   During their second encounter, appellant
took Davila to the store.  Davila thereafter frequently called appellant in an
attempt to become friends.   Davila also called appellant to request help in
looking for employment. 

One afternoon, after appellant had spent the night at the
hospital where his sister was receiving treatment, Davila called and asked
appellant to go with him to look for a job.   Appellant went to Davila=s home, but Davila
was not there.  Davila arrived a few minutes later and informed appellant that
he was late because he had to help his friend APelon@ move. Appellant
stated that while he was waiting for Davila, Davila=s friend APelon@ arrived. 
Appellant and Davila (without APelon@) went to a
taqueria to eat.   After they finished eating, Davila told appellant that he
wanted to wait until Monday to apply for  a job at a local WalMart.   The men
then proceeded to Davila=s cousin=s apartment, where
they drank several beers.   Appellant stated that when they tried to leave,
Davila pulled a gun on some other men, who also were attempting to leave. 
Davila told appellant that he had killed people before, and forced appellant at
gunpoint to take him to a dance hall.   

When the men arrived at the dance hall, Davila took
appellant=s cell phone away from him.  The two men then drank
more beers, and met up with Davila=s friends.  After
leaving the dance hall, they went to a another apartment.  Appellant stated
that he wanted to leave but Davila threatened him with the gun.   Appellant
managed to escape, but heard a gunshot as he ran away.   Appellant ran
until he found a pay phone to call his wife, who picked him up.   Soon
thereafter, the police (after tracing his vehicle) arrived at his home and took
him into custody. 

 A jury found appellant guilty of murder and assessed
punishment at twenty years= confinement in the Texas Department of
Criminal Justice, Institutional Division. In a single issue, appellant claims
on appeal that he was denied effective assistance of counsel.

 








 

II.  Analysis 

Appellant contends his trial counsel failed to (1) object
to hearsay testimony offered by the state and (2) request a mistrial following
an allegedly improper jury argument. 

Both the
United States and Texas Constitutions guarantee an accused the right to
assistance of counsel. U.S. Const. amend.
VI; Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. art. 1.051 (Vernon 2005).  This right
necessarily includes the right to reasonably effective assistance of counsel.  Strickland
v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); Ex
parte Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997).  To prove
ineffective assistance of counsel, appellant must show that (1) trial counsel=s representation fell below an
objective standard of reasonableness, based on prevailing professional norms;
and (2) there is a reasonable probability that the result of the proceeding
would have been different but for trial counsel=s deficient performance.  Strickland,
466 U.S. at 688B92.   Moreover, appellant bears the burden of proving his
claims by a preponderance of the evidence.  Jackson v. State, 973 S.W.2d
954, 956 (Tex. Crim. App. 1998). 








In
assessing appellant=s claims, we apply a strong presumption that trial counsel
was competent.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999).  We presume counsel=s actions and decisions were reasonably professional and were
motivated by sound trial strategy.  See Jackson v. State, 877 S.W.2d
768, 771 (Tex. Crim. App. 1994).  When, as in this case, there is no proper
evidentiary record developed at a hearing on a motion for new trial, it is
extremely difficult to show that trial counsel=s performance was deficient.  See
Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  If there is no
hearing or if counsel does not appear at the hearing, an affidavit from trial
counsel becomes almost vital to the success of an ineffective-assistance
claim.  Stults v. State, 23 S.W.3d 198, 208B09 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  The Court of Criminal Appeals
has stated that it should be a rare case in which an appellate court finds
ineffective assistance on a record that is silent as to counsel=s trial strategy.  See Andrews,
159 S.W.3d 98, 103 (Tex. Crim. App. 2005).  On such a silent record, this court
can find ineffective assistance of counsel only if the challenged conduct was A>so outrageous that no competent
attorney would have engaged in it.=@  Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001)).   There was no motion for new trial
filed in this case. 

Failure to
Object to Testimony

Appellant bases his first
ineffective-assistance claim on his trial counsel=s failure to object to the admission of the following individual pieces
of testimony, which he asserts constitute inadmissible hearsay:  

(1)       Houston Police Officer D.C. Lambright=s testimony that when the police arrived at appellant=s house, an unidentified male came outside and
informed the police that he was not the appellant, but that the appellant was
inside the house. 

(2)       Officer D.C. Lambright=s
testimony that when appellant came outside, he stated that he had been in fight
and changed clothes, but could not remember much of what happened because he
had been intoxicated. 

(3)       Officer D.C. Lambright=s testimony
that appellant informed him that he was right-handed. 

(4)       Elden Robles=s testimony
that while Davila was lying bleeding on the ground after being shot, Davila
exclaimed that he had been shot by APelon,@ and that he was scared of dying. 

(5)       Elden Robles=s testimony
that while Davila was lying on the ground, Robles informed the emergency
technicians that Davila had been shot by APelon.@

(6)       Houston Police Officer Phillip Yochum=s testimony that when appellant exited the house, he
stated, AIt=s me. I am
Nelson. I=ve been waiting for you to show up. . . Manuel started
a fight with me. He had a gun and tried to shoot me.  I tried to get him away.
I got the gun and I think I shot him. I ran out.@ 








(7)       Houston Police Officer Jose Selvera=s testimony that, during the interview at the police
station, appellant stated that he could not remember all of the details of the
incident because he drank about twenty beers earlier that day. 

 

Statements
in (1)B(3), (6), and (7), are appellant=s own statements.   A party=s own statements inculpating himself
are admissible as non‑hearsay, a rule grounded on the rationale that a
party is estopped from challenging the fundamental reliability or
trustworthiness of his own statements.  Trevino v. State, 991 S.W.2d
849, 853 (Tex. Crim. App. 1999); see also Tex. R.  Evid. 801(e)(2)(A)  (concluding that a statement is
not hearsay if the statement is offered against a party and is his own
statement in either an individual or representative capacity).  A failure to
object to admissible evidence is not ineffective assistance of counsel.  McFarland
v. State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992). Therefore, as to
these statements, appellant has failed to show counsel=s performance was deficient.[1]









As to
the testimony by Robles set forth in (4) and (5), above, we conclude that these
statements are dying declarations, and therefore admissible.  A dying
declaration is A[a] statement made by a declarant while believing that his or
her death was imminent, concerning the cause or circumstances of what he
believed to be his impending death.@  Tex.
R. Evid. 804(b)(2).  The declarant=s belief that his death is imminent
may be proved by express language or inferred from the circumstances of the
case, such as the nature of the injury, medical opinions stated to the
declarant, or the declarant=s conduct. Thomas v. State, 699 S.W.2d 845, 853 (Tex.
Crim. App. 1985).   The length of time the declarant lives after making the
dying declaration is immaterial. Herrera v. State, 682 S.W.2d 313, 320
(Tex. Crim. App. 1984).  In determining the applicability of  the rule, the
focus is on the declarant=s state of mind when the statement is made, not on the eventual
outcome of the patient=s injuries. In connection with Davila=s statement that APelon@ shot him, Davila expressed that he
was Ascared of dying,@ a statement which clearly
demonstrated that he thought his death was imminent. Thus, this statement was
admissible as a dying declaration.   Because the failure to object to
admissible evidence is not ineffective assistance of counsel, appellant has failed
to show his counsel=s performance was deficient in this respect.  See
McFarland, 845 S.W.2d at 846. 

Failure to
Seek a Mistrial

 Appellant
also asserts that his counsel was ineffective for failing to move for a mistrial
when the State engaged in an allegedly improper jury argument. During the State=s closing argument, the following
exchange occurred: 

[The State]:
               You can use your common sense in understanding when what
Mr. Banker says is that a witness out there saw a [P]elon leave from the crime
scene and my investigator and I are the ones desperately searching for that
witness. You can use your common sense to ask why. 

It=s not because that person has something that we=re trying to hide from you. We tried. But
unfortunately in that community, people move in and out and they=re gone. But we looked and we looked hard.  And Mr.
Banker gave you some idea of why we looked hard. So, let=s go back to these rules. 

The rules
of interrogation say a person=s arrested,
they must be given their warnings and then they can be interrogated once they
voluntarily waive them.  The rules also say, however, that=s going to be an admissible piece of evidence, it must
be recorded in some way, shape or form if it=s
going to go to you as an exhibit. 








That=s what Selvera did. He let him talk. He took notes on
what he said to the defendant, [sic] Can we put this on video now, the
defendant, knowing his rights, changed his mind, and wouldn=t go there. 

[Defense Counsel]:   Judge, I=m going to object. There is no evidence to that
effect. 

[The Court]:               Stay in the record,
please, sir. 

 








Appellant
contends that his trial counsel should have moved for a mistrial.  Even
presuming the State=s argument were improper, based on the discussion under the
first point of error regarding the Strickland requirements for
ineffective assistance of counsel, appellant=s argument is still without merit.
The isolated failure to object to improper argument does not constitute ineffective
assistance of counsel.  See Ingham v. State, 679 S.W.2d 503, 509 (Tex.
Crim. App. 1984).[2]  Moreover,
the record is silent as to counsel=s trial strategy with respect to the
actions and omissions in question. Under these circumstances, an appellate
court may not speculate about why counsel acted as he did.  See Toney v.
State, 3 S.W.3d 199, 210 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).  In the absence of such
testimony, it is difficult to meaningfully address appellant=s claims.  See Davis v. State, 930
S.W.2d 765, 769 (Tex. App.CHouston [1st Dist.] 1996, pet. ref=d). In the face of this silent
record, we can only conclude that appellant has failed to carry his burden of
proving ineffective assistance of counsel by a preponderance of the evidence.   See
Bone v. State, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002) (refusing to
reverse on appellant's claim of ineffective assistance of counsel in the
absence of evidence explaining counsel's decisions); Thompson, 9 S.W.3d
at 813 (stating that unfounded allegations will not support a claim of
ineffective assistance of counsel).   Furthermore, the record does not show
that the conduct of appellant=s trial counsel in failing to move for a mistrial was Aso outrageous that no competent
attorney would have engaged in it@  because appellant would not have
been entitled to a mistrial.  See Goodspeed, 187 S.W.3d at 392.   Mistrials
should be granted only when an objectionable event is Aso emotionally inflammatory that
curative instructions are not likely to prevent the jury from being unfairly
prejudiced against the defendant.@ Sanders v. State, 25 S.W.3d
854, 858 (Tex. App.CHouston [14th Dist.] 2000, pet. dism=d). Appellant has not shown that there is a
reasonable probability that the result of the proceeding would have been
different but for trial counsel=s alleged ineffectiveness in failing to
seek a mistrial. Accordingly, we find no merit in this claim. 

We
overrule appellant=s sole issue, and we affirm the trial court=s judgment.

 

 

_______________________________

Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed June 21, 2007.

Panel
consists of Justices Anderson, Frost, and Mirabal (Senior Justice sitting by
assignment).

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 

 

 

 

 

 

 









[1]  Even assuming that the unidentified male=s statement that he was not the appellant, but that
the appellant was in the house, was inadmissible hearsay, appellant has not
shown how this statement changed the outcome of the proceedings. Immediately
after the man disappeared, appellant  came outside, identified himself, and
made statements against his own interest.  





[2]  Although appellant contends that his counsel made
several errors by failing to object to various statements allegedly
constituting inadmissible hearsay, we conclude that these statements were
admissible; thus, appellant=s counsel was
not ineffective for failing to object.   Under these circumstances, the
isolated failure to object to allegedly improper jury argument does not
constitute ineffective assistance of counsel.