

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00027-CR

DAVID SHARP,

                                                          Appellant

 v.

THE STATE OF TEXAS,

                                                          Appellee

_____

**From the 40th District Court**
**Ellis County, Texas**
**Trial Court No. 34831CR**

---

## MEMORANDUM OPINION

---

The jury convicted David Sharp of aggravated sexual assault of a child and assessed his punishment at 99 years confinement. We affirm.

### Background Facts

Eleven-year-old S.M. was staying the night at her cousin's home after babysitting her cousin's infant son. Sharp arrived at the home in the early morning hours, and was also staying the night. S.M. testified that she was asleep on the couch and that she woke up when she felt someone touching her "private." S.M. stated Sharp was the person

touching her, and that she got up and moved to another couch. Sharp followed her, and he gave her money and told her not to tell anyone. S.M. testified that Sharp then pulled down her pants and put his "stuff" inside of her private.[1] S.M. reported the incident to family members who called the police. S.M. was taken to the hospital where an examination was performed.

The examination included taking samples for a sexual activity kit. The kit included vaginal and anal swabs and smears, oral swabs and smears, and also S.M.'s clothing. The vaginal and anal swabs tested positive for the presence of seminal fluid. S.M.'s underwear also tested positive for the presence of seminal fluid. The DNA profile from the evidence matched the DNA profile of Sharp.

Sharp went to the police station and gave a statement voluntarily on the day of the incident. In the statement, Sharp said that he was asleep on the couch and S.M. climbed on top of him and straddled him. Sharp also gave a buccal swab for DNA testing. Sharp gave another statement a few days later. He said that he was asleep on the couch and he felt something wet. When he woke up, S.M. was on top of him on his lap facing backwards. Sharp pushed S.M. off of him and told her he would tell her mother. S.M. responded "so." Sharp went back to sleep and was later woken up by someone hitting him and asking "who had touched this child." Sharp woke up his friend, and they left the home.

Sharp testified at trial and repeatedly stated that he did not have the "intent" to commit the offense. Sharp testified that S.M. sexually assaulted him. Sharp's testimony

---

[1] S.M. identified "stuff" as the male genitalia and sex organ.

at trial was consistent with his statement that he woke up and S.M. was on top of him. Sharp said that he did not wake up anyone and tell them what had happened because he did not want them to misunderstand. Sharp testified that he has prior arrests, including "four or five resisting and evading arrest." He stated that "any time I'm guilty of something… I run."

Sharp did not deny having contact with S.M. His defense was that she initiated the contact, and that he had no "intent" to commit the offense. On the day of trial, the State informed the trial court that it had just received lab reports on the biological evidence taken from S.M. and Sharp. Sharp's attorney did not seek a continuance stating that the document "does not affect our defense in anyway. It's expected."

**Admission of Evidence**

In four issues on appeal, Sharp argues that the trial court erred in admitting evidence. In the first issue, Sharp complains that the trial court erred in admitting State's Exhibit 1, twenty-two dollars in cash. In the second issue, Sharp argues that the trial court erred in admitting testimony on the results of DNA testing. In the third issue, Sharp contends that the trial court erred in admitting State's Exhibits 4, 5, and 6, the buccal swab samples from Sharp. In the fourth issue, he complains that the trial court erred in admitting State's Exhibits 8 through 16, the contents and report from the sexual assault kit containing samples from S.M. Sharp argues in each issue that there was no proper foundation and that the chain of custody was not established.

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010); *Walters v. State*, 247

S.W.3d 204, 217 (Tex. Crim. App. 2007). The trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Davis v. State*, 329 S.W.3d at 803.

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims. TEX. R. EVID. 901 (a). Without evidence of tampering, most questions concerning care and custody of a substance go to the weight attached, not the admissibility, of the evidence. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997). The State need only prove the beginning and end of the chain of custody; it need not show a moment-by-moment account of the whereabouts of evidence from the instant it is seized. *Shaw v. State*, 329 S.W.3d 645, 654 (Tex.App.—Houston [14th Dist.] 2010, pet. den'd).

**State's Exhibit 1**

S.M. testified that Sharp gave her money and told her not to tell anyone. S.M. stated that she gave the money to her aunt, Keidra Perkins. At trial, Keidra identified State's Exhibit 1 and stated that S.M. gave her the money. Officer Chad Bolton testified that he received State's Exhibit 1, $22 in cash, from Keidra. Officer Bolton sealed the money in an envelope with tape and labeled the envelope with identifying information. Officer Bolton placed the evidence in the evidence locker. It remained in the evidence locker until the time of trial. Officer Bolton identified State's Exhibit 1 at trial. Tagging an item of physical evidence at the time of its seizure and then identifying it at trial based upon the tag is sufficient for admission barring any showing by the defendant of

tampering or alteration. *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989). There is no evidence of tampering with State's Exhibit 1. The trial court did not err in admitting the evidence. We overrule the first issue.

**DNA Testimony and State's Exhibits 8-16**

Dr. Matthew Cox testified that he examined S.M. and collected specimens and samples from her. Dr. Cox submitted each sample and specimen in a standardized kit. Dr Cox placed the evidence in a box, sealed the box, and labeled it with identifying information. The evidence was placed in a lock box at Parkland Hospital. The contents of the kit were marked as State's Exhibits 8-16, and State's Exhibit 18. Dr. Cox identified these exhibits at trial.

Amanda Lehrmann, a forensic biologist at Southwestern Institute of Forensic Sciences, testified that the key to the lock box at Parkland Hospital is kept in the laboratory and accessed only by biology personnel or direct supervisors. She testified that evidence is removed from the lock box three times a week and taken to the laboratory. Lehrmann testified that when she received the kit, it was intact and sealed. Lehrmann said that SWIF labeled each piece of evidence and sealed the evidence after testing. Lehrmann supervised Daniel Tang, who was in training, in testing the evidence. Both Lehrmann and Tang signed the report detailing the evidence and results of the testing. After all testing is complete, the evidence is sealed and returned to the investigating agency. Lehrmann identified the sexual assault kit and the samples contained in the kit at trial and testified that the evidence had not been tampered with in any way.

Courtney Ferreira, a biologist and DNA analyst at SWIF, testified that her department receives the DNA samples to be tested from the serology department of SWIF. The samples are labeled with identifying information for the particular case. Ferreira testified that Ismael Parra, who was in training, performed the DNA analysis on the samples. Ferriera checked his work and approved his findings. Both Ferreira and Parra signed the report containing the results of the DNA analysis. Lehrmann, Tang, Ferriera, and Parra all testified at trial concerning the evidence in question.

There is no evidence of tampering with State's Exhibits 8 through 16 and 18. The evidence was properly identified at trial, and the State showed the beginning and the end of the chain of custody. The trial court did not err in admitting the evidence. We overrule issues two and four.

**State's Exhibits 4, 5, and 6**

State's Exhibit 4 is a buccal swab from Sharp's left cheek, State's Exhibit 5 is a sample from his right cheek, and State's Exhibit 6 is an envelope in which the samples were placed. Sergeant Rodney Rickman collected the samples, packaged each sample separately in an envelope, and labeled and sealed both samples. Detective Mark Mahoney took the two envelopes and placed them in a larger envelope, State's Exhibit 6. Detective Mahoney sealed and labeled State's Exhibit 6 and turned it over to Lieutenant Ron Roark for delivery to SWIF.

Lehrmann testified that the exhibits were received at SWIF and labeled with identifying information. The DNA samples were heat sealed and placed in the freezer for DNA testing.

Officer Rickman identified the exhibits at trial, and stated that they had not been tampered with in any way. The trial court did not err in admitting State's Exhibits 4, 5, and 6. We overrule the third issue.

## Conclusion

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 31, 2011
Do not publish
[CRPM]