NUMBER 13-10-00317-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI -
EDINBURG 


                                                                                                                     


 

JESSE CASTILLO JR.,                                                       
    Appellant,

 

v.

 

THE STATE OF TEXAS,                         
                            Appellee.

                                                                                                                     
  

 

On appeal from the 24th
District Court 

of Victoria County,
Texas.

 
                                                                                                                    

 

MEMORANDUM OPINION[1]

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza  

Memorandum Opinion by
Justice Rodriguez

                                                                                                                                    

A jury convicted appellant Jesse
Castillo Jr. of continuous sexual assault of H.L., a child less than fourteen
years old,[2]
and sentenced him to thirty-seven years in the Texas Department of Criminal
Justice—Institutional Division, without eligibility for parole.  See Tex. Penal Code Ann. ' 21.02 (West Supp. 2010).  By five
issues, Castillo complains of the following:  (1) trial court error in removing
a juror from the panel; (2-4) trial court error in admitting outcry testimony,
"bolstering" testimony, and the Child Advocacy Center (CAC) child
assessment videotape; and (5) ineffective assistance of counsel.  We affirm.

I.  Removal of a
Juror

 

            By his first issue, Castillo contends that
the trial court erred when it removed a juror from the panel before trial and,
without declaring the juror disabled, replaced him with a juror who had
departed.  He also complains that the trial court erred when it did not declare
a mistrial.

A.  Background

After the jury was sworn but before any
witnesses were called, the trial court notified the parties that it had
received a letter from one juror explaining that he had a similar sexual-abuse
experience in his family.  At a bench conference, when the trial court asked
this juror if he could make a decision about the guilt or innocence of Castillo
based on the evidence alone, he answered, "I don't know."  The juror
also agreed that he was very concerned about that—"[v]ery much so." 
The State and defense counsel declined the opportunity to ask questions of this
juror.

After the juror returned to the jury
room, the trial court expressed its belief that it did not think the juror's
answer was equivocal; the court "thought [the juror] was definitely saying
. . . that he didn't know if he could be fair."  The trial court
concluded that it had "no choice but to excuse him from jury duty in this
trial."  Castillo did not object, and the trial court excused the juror.

The trial court then asked Castillo if
he was willing to "try this case to the 11 remaining jurors."  See
Tex. Code Crim. Proc. Ann. art.
36.29 (West Supp. 2010).  Castillo responded, "No."  The trial court
next asked Castillo if he wanted a mistrial, and Castillo responded, "No,
I don't."  After Castillo rejected a mistrial, the following exchange
occurred between the trial court, Castillo, his counsel, and the State:

Court:                         Then
the next solution is, by agreement[,] we can have the next juror on the
list . . . come in, I can read the instructions to him, I can have
the indictment read again to Mr. Castillo in [his] presence and receive his
plea and then add [this next juror] to the jury, thereby comprising a 12-person
jury.  Mr. Castillo, do you agree to that solution?

 

Castillo:                      Yes,
sir.

 

Court:                         [Defense
counsel], do you agree to that—

 

[Defense Counsel]: Yes,
sir.

 

Court:                         —solution? 
[A]nd does the State agree to that solution?

 

[State]:                        State
agrees, Your Honor.

 

B.  Discussion

            Now, on appeal, Castillo asserts that because
the excused juror may only have been biased or prejudiced against him and
because the juror did not answer definitively "yes" or
"no," the trial court "improperly and too quickly released [the]
juror . . . from duty prior to making an appropriate detailed
inquiry," and once released and without an agreement to proceed with only
eleven jurors, the trial court failed to pursue the only remedy
"sanctioned by article 36.29," which Castillo identifies as the
"discharge of the remainder of the jury panel through declaration of a
mistrial."  See id.

The initial question before us appears
to be whether the juror was disabled within the context of article 36.29(a).  See
id. (setting out that if, after the trial of any felony case begins and a
juror dies or, as determined by the judge, becomes disabled from sitting, the
remainder of the jury has the power to render the verdict).  A juror is
disabled if he has a "physical illness, mental condition, or emotional
state" which hinders the juror's ability to perform the duty of a juror.  Hill
v. State, 90 S.W.3d 308, 315 (Tex. Crim. App. 2001).  We "defer to the
trial court's factual determinations . . . because the judge is
'Johnny-on-the-spot,' personally able to see and hear the witnesses testify. 
He makes credibility determinations, based upon demeanor, tone of voice,
hesitancy of speech, perhaps the almost imperceptible shrug of shoulders,
tightening of the jaw, or clench of fists."  Manzi v. State, 88
S.W.3d 240, 254 (Tex. Crim. App. 2002) (citing Anderson v. Bessemer City,
470 U.S. 564, 575 (1985) ("[O]nly the trial judge can be aware of the variations
in demeanor and tone of voice that bear so heavily on the listener's
understanding of and belief in what is said.")).

With regard to claims of error during
jury selection, the trial court's ruling will not be disturbed absent a showing
of an abuse of discretion.  Jones v. State, 982 S.W.2d 386, 388 (Tex.
Crim. App. 1998) (en banc) (stating that an abuse of discretion standard
applies to error in selecting jury); Curry v. State, 910 S.W.2d 490, 493
(Tex. Crim. App. 1995) (en banc).  If a juror vacillates or equivocates on the
juror's ability to follow the law, "the reviewing court must defer to the
trial court's judgment."  Brown v. State, 913 S.W.2d 577, 580 (Tex.
Crim. App. 1996); Riley v. State, 889 S.W.2d 290, 300 (Tex. Crim. App.
1993) (en banc).

In sum, the evidence in this case
reveals that the trial court received a letter from the juror in question
indicating that his daughter had a similar experience as did H.L. in this case. 
The juror indicated that he did not know if he could hear the evidence,
evaluate it, and make a decision of guilt or innocence based on that evidence
alone.  When the trial court asked the juror if he was concerned about that, he
responded, "Very much so."  Then, when provided an opportunity to ask
questions of this juror, neither the State nor Castillo did so.  And Castillo
raised no objection to this juror being excused.  The trial court, being aware
of the variations in the juror's demeanor, tone of voice, and hesitancy of
speech, among other things, concluded that the juror's response was not
equivocal and that it had no choice but to excuse him.  See Manzi, 88
S.W.3d at 254.  Further, even had the juror been vacillating in his belief that
he could apply the facts to the law, we must defer to the trial court's
judgment.  See Brown, 913 S.W.2d at 480.  Therefore, assuming without
deciding that this issue was preserved for our review,[3]
based on the evidence before the trial court, we conclude the trial court did
not abuse its discretion on this basis.  See Routier v. State, 112
S.W.3d 554, 588 (Tex. Crim. App. 2003) (providing that the determination as to
whether a juror is disabled is within the discretion of the trial court); Jones,
982 S.W.2d at 388.

Having determined that the trial court
did not abuse its discretion by excusing the juror, the second matter for this
Court to determine is whether the trial court erred by failing to discharge the
remainder of the jury panel through declaration of a mistrial.  Article 36.29
"is not applicable until the jury is sworn."  Broussard v. State,
910 S.W.2d 952, 957 (Tex. Crim. App. 1995).  The jury had been sworn in this
case, therefore, article 36.29 applied.  Generally, the trial court errs if it
does not give a defendant the opportunity to choose between continuing with
eleven jurors, as provided by article 36.29, or seeking a mistrial.  See
generally Carrillo v. State, 597 S.W.2d 769, 771 (Tex. Crim. App.
1980); see also Hegar v. State, 11 S.W.3d 290, 294 (Tex. App.—Houston
[1st Dist.] 1999, no pet.); accord Decker v. State, 717 S.W.2d 903, 905
(Tex. Crim. App. 1983) (en banc) (applying article 36.29 reasoning in unsworn
jury case) (citing Williams v. State, 631 S.W.2d 955, 957 (Tex.
App.—Austin 1982, no pet.)).  In this case, however, the trial court gave
Castillo that opportunity.  Castillo informed the court that he chose neither
eleven jurors nor the opportunity to seek a mistrial, and Castillo's counsel
did not indicate otherwise.  Instead, Castillo, his counsel, and the State
agreed to bring in the next juror on the list, read that juror the
instructions, read the indictment again to Castillo in the presence of that
juror, receive his plea, and then add the next juror to the jury, thereby
comprising a twelve-person jury.

It is within the trial court's sound
discretion to consider less drastic alternatives to a mistrial.  Strickland
v. State, 741 S.W.2d 551, 552-53 (Tex. App.—Dallas 1987, no pet.).  Here,
the trial court held a hearing and established facts relevant to proceeding to
trial with eleven jurors.  After Castillo declined that possibility and
informed the trial court he did not want to pursue a mistrial, all parties
agreed to bring in the next juror not previously struck and to continue the
trial with twelve jurors.  In this case, we conclude that it was proper for the
trial court to proceed in this manner and that the trial court did not abuse
its discretion on this basis.  We overrule Castillo's first issue.

II. 
Admission of Evidence

A.  Outcry Testimony

            By his second issue,
Castillo complains that the trial court erred when it admitted outcry testimony
of R.G., H.L.'s step-mother,[4]
without first holding a hearing outside the presence of the jury to determine
the reliability of the statement based on the time, content, and circumstances
of the statement, as required by article 38.072 of the code of criminal
procedure.  See Tex. Code Crim.
Proc. Ann. art. 38.072, § 2(b)(2) (West Supp. 2010).  Castillo contends
that this error affected his substantial rights to a fair and just trial and
constitutes reversible error.

            It is undisputed that the trial court did not
conduct a reliability hearing.  See id.  However, any error resulting
from the admission of the testimony of R.G. was rendered harmless when other
evidence was admitted describing the same facts.  See Lane v. State, 151
S.W.3d 188, 192-93 (Tex. Crim. App. 2004); Long v. State, 821 S.W.2d
216, 217 (Tex. App.—Houston [14th Dist.] 1991, no pet.).  H.L. testified
regarding the details of the sexual abuse.  Castillo did not object to this
testimony.  On cross-examination, H.L. confirmed that she talked with R.G. and
told her what Castillo had done.  Because the same facts were described through
H.L.'s testimony, without objection, any error in the admission of R.G.'s
outcry testimony was harmless.  See Lane, 151 S.W.3d at 192-93; Long,
821 S.W.2d at 217.  We overrule Castillo's second issue.

B.  "Bolstering"
Testimony

            Castillo contends, by his
third issue, that the trial court erred when it admitted the following allegedly
improper bolstering testimony offered by R.G. on redirect examination by the
State:

Q.        So do you believe [H.L.] or not?

A.        Yes, I do.

Castillo offered no objection, and this issue has not
been preserved for our review.  See Tex.
R. App. P. 33.1(a).  We overrule Castillo's third issue.

C.  CAC Assessment Videotape

            In his fourth issue, Castillo contends that
the trial court erred when, contrary to the provisions of rule of evidence
801(a)(1)(B), it admitted the CAC child assessment videotape as a prior
consistent statement.  See Tex.
R. Evid. 801(e)(1)(B).  He claims that the State's reliance on rule 801
and Hammons v. State is misplaced.  See Tex. R. Evid. 801(e)(1)(B); Hammons, 239 S.W.3d 798,
806 (Tex. Crim. App. 2007).  We disagree.

Rule 801(e)(1)(B) provides that a
statement is not hearsay if the declarant testifies at trial subject to
cross-examination, the statement is consistent with the declarant's testimony,
and the statement "is offered to rebut an express or implied charge
against the declarant of recent fabrication or improper influence or motive." 
Tex. R. Evid. 801(e)(1)(B).  It
is clear from the record that H.L. testified at trial and was cross-examined
before the videotape was introduced and admitted into evidence.  See id. 
It is also undisputed that H.L.'s prior statement was consistent with her trial
testimony.  See id.  The only question then before this Court is whether
a charge of recent fabrication was raised by Castillo which would warrant
admission of H.L.'s prior consistent statement under rule 801(e)(1)(B).[5] 
See id.

We review the trial court's ruling that
a prior consistent statement is admissible under rule 801(e)(1)(B) for an abuse
of discretion.  Hammons, 239 S.W.3d at 806.  The trial court abuses its
discretion only when the decision lies "outside the zone of reasonable
disagreement."  Walters v. State, 247 S.W.3d 204, 214 (Tex. Crim.
App. 2007) (quoting Apolinar v. State, 155 S.W.3d 184, 186 (Tex. Crim.
App. 2005)).  We view the evidence in the light most favorable to the trial
court's ruling admitting the statement.  Klein v. State, 273 S.W.3d 297,
304 (Tex. Crim. App. 2008).

In assessing whether the
cross-examination of a witness makes an implied charge of recent fabrication or
improper motive, a reviewing court should focus on the "purpose of the
impeaching party, the surrounding circumstances, and the interpretation put on
them by the [trial] court."  Hammons, 239 S.W.3d at 808 (citation
omitted).  A charge of recent fabrication "may be subtly implied through
tone, tenor, and demeanor" and need not be restricted to the specific
wording used by counsel.  Id. at 799.  Because there is no "bright
line" between a challenge to the witness's memory or credibility and a
suggestion of conscious fabrication, the trial court has substantial discretion
in determining whether the tenor of the questioning reasonably implies a
recent, conscious intent to fabricate.  Id. at 804-05.

Here, Castillo cross-examined H.L.
concerning the overall strictness of her father and step-mother as compared to her
mother and Castillo.  Specifically, Castillo asked H.L. if her father and
step-mother were more lenient with the way she dressed than Castillo or not as
"strict."  Castillo also asked questions about which set of parents
allowed her to talk with male friends.  Later during this cross-examination,
Castillo asked H.L. who was less strict, her dad and step-mother or her mother
and Castillo.

At the hearing on the State's motion to
admit the videotape, after ruling that it was "going to let the tape
in," the trial court explained its reasoning as follows:  "Because I
believe that there is an implied—through the cross[-]examination I think there
is an implication that there is recent fabrication in the girl's testimony and
therefore I think it fits the rule and so I'm allowing it in."  

Assuming without deciding that Castillo
made no concession of fabrication at the hearing and "giving deference to
the trial judge's assessment of tone, tenor, and demeanor," we conclude
the trial court did not abuse its discretion in admitting the videotaped
out-of-court statement under rule 801(e)(1)(B).  See id. at 809.  The
implication made by Castillo through this line of questioning was that H.L.
fabricated the evidence against him so that she could live with her biological
father and step-mother who were not as strict as Castillo.  A reasonable juror
could have concluded that Castillo, the cross-examiner, was mounting a charge
of recent fabrication which would warrant admission of the videotape—H.L.'s
prior consistent statement—under rule 801(e)(1)(B).  See id.; Michael
v. State, 235 S.W.3d 723, 728 (Tex. Crim. App. 2007); see also Tex. R. Evid. 801(e)(1)(B).  We
overrule Castillo's fourth issue.[6]

III. 
Ineffective Assistance of Council

            By his fifth issue, Castillo asserts that
trial counsel provided ineffective assistance.  Castillo alleges that counsel
was ineffective when he failed to do the following:  (1) request a mistrial
when presented with the juror disability issue prior to starting trial; (2)
request an outcry-witness reliability hearing; (3) request a gatekeeper
hearing; (4) object to the introduction of the medical records of sexual
assault nurse examiner; (5) object to the bolstering of H.L.'s testimony by the
nurse; (6) cross-examine the State's victim-impact counselor during the
punishment hearing; and (7) present an adequate closing argument during the
punishment phase of the trial.

A.  Standard of Review

            Strickland v. Washington sets forth
the standard with which we review claims of ineffective assistance of counsel. 
466 U.S. 668, 688 (1984); see Stafford v. State, 813 S.W.2d 503, 506
(Tex. Crim. App. 1991) (en banc).  In order to determine whether appellant's
trial counsel rendered ineffective assistance at trial, we must first determine
whether he has shown counsel's representation fell below an objective standard
of reasonableness—whether counsel's representation was deficient—and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel's errors—whether the deficient performance
was so serious that it deprived appellant of a fair trial.  Strickland,
466 U.S. at 688, 690-94.

In assessing a claim of ineffective assistance
of counsel, we indulge a strong presumption that "counsel's conduct fell
within a wide range of reasonable representation."  Salinas v. State,
163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  Appellant must overcome the
presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.  Garcia v. State, 57 S.W.3d 436, 440
(Tex. Crim. App. 2001); Stafford, 813 S.W.2d at 508-09.  When the record
is silent as to trial counsel's strategy, we will not conclude that appellant
received ineffective assistance unless the challenged conduct was "so
outrageous that no competent attorney would have engaged in it."  Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  And rarely will the
trial record on direct appeal contain sufficient information to permit a
reviewing court to fairly evaluate the merits of such a serious allegation.  Bone
v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  In the majority of
cases, the appellant is unable to meet the first prong of the Strickland
test because the record on direct appeal is underdeveloped and does not
adequately reflect the alleged failings of trial counsel.  Mata v. State,
226 S.W.3d 425, 430 (Tex. Crim. App. 2007).  To demonstrate prejudice under the
second prong, appellant must show a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S. at 694.  Failure to make the required
showing of either deficient performance or sufficient prejudice defeats the
claim of ineffectiveness.  Id. at 697.

B.  Discussion

1.  Mistrial
After a Juror Was Declared Disabled

Castillo first complains that counsel
was ineffective when he did not argue for a mistrial or when counsel refused to
accept a mistrial offered by the trial court when a juror was declared disabled
although Castillo himself refused to accept a mistrial.  He contends that the
requirements of article 36.29(c) are mandatory, including the granting of a
mistrial, and argues that counsel's incorrect understanding of this requirement
cannot reasonably be considered to be trial strategy or tactics.  See Tex. Code Crim. Proc. Ann. art.
36.29(c).  Castillo asserts that "[i]f a mistrial would have been granted,
a new panel of prospective jurors would have then been examined, and trial
counsel would have had the opportunity to apply the lessons already learned
from the State's initial voir dire examination."

As we set out in Castillo's first issue,
a trial court has discretion to consider the less drastic alternative to a
mistrial, and in this case, the trial court did so.  See Strickland, 741
S.W.2d at 552-53.  The record is silent as to trial counsel's strategy in
choosing to go forward.  Bone, 77 S.W.3d at 833. 
It is possible that Castillo and his counsel wanted to exclude this juror
because he might have been prejudiced against Castillo.  We may not speculate
about why counsel acted as he did, see Toney v. State, 3 S.W.3d 199, 210
(Tex. App.—Houston [14th Dist.] 1999, pet. ref'd), and we simply do not have
sufficient information to make the determination that this challenged conduct
was "so outrageous that no competent attorney would have engaged in
it."  See Goodspeed, 187 S.W.3d at 392.  Therefore, the first prong—deficient
performance—has not been satisfied.  Strickland, 466 U.S. at 688,
690-94.  Moreover, on this record, we are not persuaded by Castillo's
second-prong argument, that the result of the proceedings would have been
different had a new panel been selected because defense counsel "would
have had the opportunity to apply the lessons already learned from the State's
initial voir dire examination."  See id. at 694.

2.  Outcry-Witness Hearing

            Castillo also contends that counsel was
ineffective when he did not object to the trial court's failure to conduct an
outcry-witness hearing in order to determine the reliability of H.L.'s
statement to R.G.  See Tex. Code
Crim. Proc. Ann. art. 38.072.  Castillo asserts that there is no
strategic reason for failing to request the hearing when it becomes apparent
that the trial court is not going to do so and that by not having a hearing,
the trial court was deprived of its ability to determine the reliability of the
statement as to time, content, and circumstances.  See id.  We are not
persuaded by these arguments when H.L. testified and described the same details
of the sexual abuse.[7] 
See Lane, 151 S.W.3d at 192-93; Long, 821 S.W.2d at 217.

3.  Gatekeeper Hearing Pursuant to Rule
of Evidence 705(b)

            Castillo complains that counsel was
ineffective when he did not request a rule 705(b) hearing for either of the
State's expert witnesses, Elena Torres, a family violence counsel, and Lisa
Baylor, a forensic scientist.  See Tex.
R. Evid. 705(b) (allowing the opposing party an opportunity to explore
the basis of the expert's opinions without fear of eliciting damaging hearsay
or other inadmissible evidence in the presence of the jury).  He asserts that,
had counsel requested a rule 705(b) hearing, the defense would have been
allowed to conduct a voir dire examination directed to the underlying facts or
data upon which each opinion was based.  See id.  

a.  Elena Torres

            As acknowledged by Castillo, the subject
matter of Torres's testimony related to the reactions of children to sexual
abuse.  Although Torres generally testified regarding such reactions, our
review of the record reveals that Torres provided no damaging, inadmissible
testimony in the presence of the jury that could have been discovered in a rule
705(b) hearing outside the presence of the jury.  See Goss v. State,
826 S.W.2d 162, 168 (Tex. Crim. App. 1992) (en banc); see also McBride v.
State, 862 S.W.2d 600, 609 (Tex. Crim. App. 1993) (en banc); Vasquez v.
State, 819 S.W.2d 932, 935 (Tex. App.—Corpus Christi 1991, pet. ref'd)
(providing that rule 705(b) allows the party not calling the expert to explore
the basis for the opinions without having the jury exposed to otherwise
inadmissible data).

Furthermore, during cross-examination
trial counsel had the opportunity to, and did, ask Torres whether the reactions
about which she testified were always associated with sexual abuse.  Counsel
asked, "Could a child take on characteristics of sexual assault without
actually having been sexually assaulted?", and Torres responded,
"Rarely."  Following a series of questions directed at eliciting
testimony regarding how a child might fabricate such responses, counsel's
cross-examination ended with the following:

Q.        But
isn't it also possible that we're also training a child, if they wanted to get
an adult in trouble, we're teaching them what to say to trigger investigations,
we're training them what to say in order to make it more believable?

 

A.        It's just
very, very rare that that ever happens.

 

Q.        But it is
possible?

 

A.        I suppose. 
Anything's possible, I mean. . . .

 

Clearly, counsel's strategy was to discredit Torres's
testimony in support of his fabrication defense.  We cannot conclude that the
lack of a hearing impacted the effect of Torres's testimony.

            Finally, Castillo complains
that counsel was ineffective because he did not cross-examine Torres as to
whether she had personally interviewed or met with H.L. or any member of her
family.  He asserts that "this arguably left the jury with the decision
that Ms. Torres had, indeed, met with the complaining witness and/or members of
her family and had formed her opinion as a result of such interview(s) and
meeting(s)."  However, the record is silent on this point, and it is just
as arguable that because neither the State nor defense counsel addressed these
facts, it was apparent to the jury that Torres had met with neither H.L. nor
her family members.

b.  Lisa Baylor

Again, as with Baylor, Castillo complains
that had trial counsel requested a 705(b) evidentiary hearing, he would have
been allowed to conduct a voir dire examination to explore the underlying facts
or data underlying Baylor's opinion as to DNA evidence.  See Tex. R. Evid. 705(b).  Thus, Castillo
argues that his defense counsel was ineffective for not doing so.

Without providing record citations,
Castillo summarily states that "Ms. Baylor testified about the
stratospheric probabilities that another Hispanic male, other than [Castillo],
could be found on the planet matching the DNA profile results produced by her
analysis."  Castillo then makes the following argument, specific as to
Baylor:

With
regard to Ms. Baylor's testimony, there was no record of any cross-examination
as to lab protocols, lab procedures, sample error rates, and the like.  While
[Castillo] readily concedes that DNA technology is no longer a novel science,
he respectfully asserts that a proper 705(b) evidentiary hearing can uncover
possible problems as to the application of the scientific techniques to this
particular case. . . .

 

There
was no effective cross-examination of Ms. Baylor regarding lab protocol and
procedures.  The State was not put to its burden to show for the testimony of .
. . Ms. Baylor that the requirements of qualification, reliability, and
relevance of the testimony had been met. (Citations omitted.)

 

Our review of the State's direct
examination of Baylor, however, reveals that the State met the requirements of
qualification, reliability, and relevance.  See Vela v. State, 209
S.W.3d 128, 130-31 (Tex. Crim. App. 2006) (explaining that these requirements
are based on Texas Rules of Evidence 104(a) (qualification), 702 (reliability),
and 401 and 402 (relevance)).  Because the record is silent regarding counsel's
strategy, we do not know why counsel chose to refrain from addressing these
matters on cross-examination.  Instead, he chose to challenge the
conclusiveness of Baylor's findings as to Castillo and the possibility of the
DNA being that of another person from whom a buccal swab was not obtained.  We
cannot conclude that this challenged conduct was "so outrageous that no
competent attorney would have engaged in it."  Goodspeed, 187
S.W.3d at 392.  And, as we determined in Castillo's challenge to the State's
expert on family violence, neither can we conclude that the lack of a hearing
impacted the effect of Baylor's testimony.

4.  Admission of Medical Records and Nurse's "Bolstering"
Testimony

 

            Castillo argues that counsel was ineffective
when he failed to make a hearsay objection to the admission of the Sexual
Assault Examination Forensic Report of Leslie Kallus, the sexual assault nurse examiner
who examined H.L., because this medical record identified Castillo as the
perpetrator of the sexual assault.  Castillo acknowledges that the State would
have likely obtained the admission of the medical record under hearsay
exception 803(4), see Tex. R.
Evid. 803(4); Taylor v. State, 268 S.W.3d 571, 590 (Tex. Crim.
App. 2008), but in doing so would have provided trial counsel with important
information useful for cross-examination purposes including such matters as the
lag period between the interview and her arrival at the hospital, the method of
interrogation and examination, and types of statements made.  Castillo also
contends that trial counsel was ineffective in his representation when he did
not object when Kallus testified on direct examination that the biological
evidence on H.L.'s breast demonstrating that Castillo could not be excluded as
a contributor was consistent with H.L.'s medical history and her description of
what had occurred.

We do not know why Castillo chose to
refrain from objecting to Kallus's allegedly inadmissible testimony or to the
admission of her medical records.  The record is devoid of any explanation
regarding counsel's reasons or strategy in not objecting.  It is possible that
counsel may have chosen not to object to the evidence because "an
objection might draw unwanted attention to a particular issue."  Bollinger
v. State, 224 S.W.3d 768, 781 (Tex. App.—Eastland 2007, pet. ref'd). 
Therefore, the record does not demonstrate that the challenged conduct was not
so outrageous that no competent attorney would have engaged in it, and Castillo
has failed to overcome the presumption that counsel's actions were sound trial
strategy.  See Goodspeed, 187 S.W.3d at 392; Garcia, 57
S.W.3d at 440; Stafford, 813 S.W.2d at 508-09.

6.  Cross-Examine a Witness During the
Punishment Phase of the Trial

Castillo also bases his claim of
ineffective assistance on counsel's failure to cross-examine the State's
victim-impact counselor, Leticia Lechuga, during the punishment phase of the
trial.  The State called Lechuga, a crisis interventionist counselor at Hope of
South Texas, who saw H.L. on forty different occasions beginning July 3, 2008. 
The State focused its questions on how H.L. reacted when her mother stopped
supporting her and how different victims react to sexual abuse, not how H.L.
reacted to sexual abuse.  When the State passed the witness, defense counsel
asked no questions.

Castillo asserts that because Lechuga
had seen H.L. on many occasions, she would have been able to testify about the
events which had occurred in her life since the sexual abuse incidents.  He
argues, based on defense counsel's "no questions" approach, that the
jury was left with the sole impression provided by Lechuga that sexual abuse
victims have boundary issues, become promiscuous, have trust issues, and get
into abusive unhealthy relationships because their self-worth and self-esteem
have been so damaged that counseling may not be able to repair the damage. 
Castillo urges this Court to find that it is clear from the record that there
existed no compelling strategic reason to not ask questions of Lechuga and that
her opinions should have been fully developed on cross-examination.  We decline
to do so.

The State's direct examination of
Lechuga highlighted H.L.'s reaction to the loss of her mother's support. 
Lechuga also provided testimony about how persons who are sexually assaulted
generally react.  The record is silent as to the motivation of counsel's
tactial and strategic decisions.  Defense counsel may have made a strategic
decision to not cross-examine Lechuga fearing adverse effects from such examination
or fearing that he may inadvertently introduce damaging evidence, i.e., that
H.L. did, in fact, exhibit reactions similar to those discussed by Lechuga. 
See Rockwood v. State, 524 S.W.2d 292, 293-94 (Tex. Crim. App.
1975) (concluding that counsel's failure to cross examine the complainant,
among other things, was not ineffective assistance); Pryor v. State, 719
S.W.2d 628, 634 (Tex. App.— Dallas 1986, pet. ref'd) (same); see also Grant
v. State, No. 13-08-00424-CR, 2009 Tex. App. LEXIS 1629, at *4-6 (Tex.
App.—Corpus Christi 2009, no pet.) (mem. op., not designated for publication)
(concluding that defense counsel's failure to present available impeachment
evidence or thoroughly cross-examine the victim did not constitute ineffective
assistance where record was silent as to the motivation of counsel's tactical
and strategic decisions).  Again, we must conclude that the challenged
conduct is not so outrageous that no competent attorney would have engaged in
it.  See Goodspeed, 187 S.W.3d at 392.  It is appellant's burden
to show that trial counsel rendered deficient representation because of his
failure to cross-examine the State's witness.  See Davis v. State, 831
S.W.2d 839, 843 (Tex. App.—Dallas 1992, pet. ref'd).  We cannot conclude that
Castillo has done so in this instance.

7.  Closing Argument at Punishment
Hearing

Finally, Castillo contends that counsel
was ineffective because he presented an inadequate closing argument during the
punishment phase of the trial, amounting to only two pages of the reporter's
record.  He complains that nowhere in closing argument did counsel emphasize
Castillo's good character traits or even summarize the testimony of the
defense's punishment witnesses.  See Moore v. State, 983 S.W.2d 15,
23-24 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (concluding that counsel's
performance was ineffective when he made no investigation regarding possible
mitigation evidence which "rendered the adversarial process presumptively
unreliable at punishment," failed to investigate appellant's background,
and presented a closing argument which failed to disclose any of appellant's
good character traits).  Castillo urges this Court to find that there existed
no strategic reason not to emphasize good character traits elicited during the
defense's case in chief and that counsel's closing argument was inadequate and
ineffective.

Counsel's argument occurred at the
punishment stage of Castillo's trial, after his guilt had been determined by
the jury sitting to decide his penalty.  Throughout his argument, trial counsel
extensively argued compassion for the Castillo family.  He reminded the jurors
that their job was not to hand out vengeance but to hand out justice and that,
in this case, justice would be served by sentencing Castillo to the minimum
twenty-five years and not keeping him in prison any longer.  Castillo overlooks
these aspects of his trial counsel's argument so that he can highlight what he
claims is missing, specifically an argument about his good character traits.

It is also plausible that counsel
believed the best strategy might be brevity and openness in an attempt to
mitigate punishment.  See Flemming v. State, 949 S.W.2d 876, 881 (Tex.
App.—Houston [14th Dist.] 1997, no pet.) (finding counsel may have believed the
best strategy in the closing argument was to be brief and appear open and
honest).  The record in this case is silent regarding counsel's strategy with
respect to the content of his closing argument.

C.  Summation

In summary, we conclude that Castillo has
not overcome the presumption that trial counsel's actions were within the wide
range of reasonable professional assistance.  Strickland,
466 U.S. at 688, 690-94; Salinas, 163 S.W.3d at 740.  Moreover, to the
extent any deficiency existed, Castillo has not demonstrated there was a
reasonable probability that, but for counsel's deficient performance, the
result of the proceeding would have been different.  Strickland, 466
U.S. at 688, 694.  Based on the record before us, we conclude that Castillo has
failed to show ineffective assistance of counsel.[8] 
We overrule Castillo's fifth issue.

IV. 
Conclusion

            We
affirm the judgment of the trial court.

 

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the 31st 

day of August, 2011.

                                                                                                                                                            









[1]  Because this is a memorandum opinion and the parties are
familiar with the facts, we will not recite them here except as necessary to
advise the parties of the Court's decision and the basic reasons for it.  See
Tex. R. App. P. 47.4.  

 





[2]
Initials have been used to protect the identity of the child.





[3] We note that the State first asserted that Castillo
failed to preserve this issue of juror disability because he did not object
when the trial court excused the juror.





[4]
R.G. testified that H.L.'s father was her common-law husband and that she had
known H.L. since H.L. was a baby.





[5]
At the hearing on the State's motion to admit the videotape, Castillo informed
the trial court that at some point he would be arguing that H.L. fabricated the
accusations.  On appeal, Castillo contends that any concession at the hearing
was to an implied charge against H.L. of fabrication from the beginning; it was
not an implied charge against H.L. of recent fabrication.  See Tex. R. Evid. 801(e)(1)(B).  However, arguments
on appeal must comport with arguments made at trial, and an appellant must
bring to the trial court's attention the very complaint that it is now making
on appeal.  See Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App.
2005).  Because Castillo did not urge the distinction to the trial court, he has
failed to preserve this argument for our review.  See id.





[6]
Castillo also argues, by his fourth issue, that the videotape was admitted
contrary to article 38.071 of the Texas Code of Criminal Procedure;
specifically that the State did not establish the proper predicate for the
admission of the videotape.  See Tex.
Code Crim. Proc. Ann. art. 38.071 (West Supp. 2010).  However, this
argument was not made to the trial court and, therefore, was not preserved for
our review.  See Reyna, 168 S.W.3d at 177.

 





[7] Castillo also asserts that counsel
did not properly object to statements made by H.L. as testified to by a witness
who was not designated as an outcry witness.  Castillo presents this as a basis
for his ineffective assistance of counsel complaint in his "Summary of the
Argument," but his brief wholly fails to discuss or analyze the argument
and does not contain citations to the record or authority.  We conclude that
Castillo has waived this argument.  See Tex. R. App. P. 38.1(i).





[8] Counsel should ordinarily be accorded
an opportunity to explain his actions before being condemned as unprofessional
and incompetent.  See Rylander v. State, 101 S.W.3d 107, 111 (Tex. Crim.
App. 2003) (en banc).  Because the reasonableness of trial counsel's choices
often involve facts that do not appear in the appellate record, an application
for writ of habeas corpus is the more appropriate vehicle to raise ineffective
assistance of counsel claims.  See Mitchell v. State, 68 S.W.3d 640, 642
(Tex. Crim. App. 2002) (en banc).