**Affirmed and Memorandum Opinion filed March 7, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-12-00202-CR

_____

**PIERRE SENTEL BUCKLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 1275419**

## MEMORANDUM OPINION

Appellant Pierre Sentel Buckley was indicted for capital murder, and a jury convicted him of the lesser-included offense of aggravated robbery and assessed punishment at 60 years' confinement. We affirm.

## BACKGROUND

The appellant has not challenged the sufficiency of the evidence supporting his conviction; therefore, we recite only those facts necessary to the disposition of this appeal.

On July 14, 2010, the complainant Ontonio Cooper and his cousin, Keith Jett, decided to purchase 100 pounds of marijuana. Jett contacted his regular drug dealer Marcus Roberson (a/k/a "Smoke") to set up the purchase. Cooper and Jett went to Roberson's apartment where they met Roberson, Edward Lacy, and the appellant. Cooper produced $30,000 in cash; after the men counted it out, Roberson advised Cooper and Jett that it would take him several hours to secure the marijuana. Cooper and Jett returned to their truck with the $30,000, and Roberson sent Lacy and the appellant "to ride with [them] and make sure everything is all right."

After driving about 10 minutes, Cooper parked the truck, and Lacy got out to use the restroom. Jett was smoking a cigarette outside the truck when the appellant shot him once in the neck and shot Cooper four times in the back before grabbing the $30,000 and fleeing. Cooper was killed, but Jett survived.

The appellant was indicted for capital murder. At trial, ballistics evidence showed that Cooper had been killed with .38 caliber bullets, and evidence was admitted that the appellant's girlfriend had purchased a silver .38 caliber revolver and a black 9mm automatic pistol shortly before Cooper's death. The appellant's objections to the admission of this evidence were overruled.

The jury was instructed on capital murder and the lesser-included offense of aggravated robbery. The jury convicted the appellant of aggravated robbery and sentenced him to 60 years' confinement. This appeal followed.

2

# ANALYSIS

## I.      Unanimity

In his first issue, the appellant argues that the jury charge violated his constitutional and statutory right to a unanimous verdict because it instructed the jury on two separate crimes — robbery aggravated by a serious bodily injury[1] and robbery aggravated by the use or exhibition of a deadly weapon[2] — but failed to require the jury to unanimously determine which crime the appellant committed before finding the appellant guilty of aggravated robbery.  The State concedes that it was error to omit such a requirement from the jury charge but insists that the error was harmless.

We review claims of charge error under a two-pronged test.  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *Rolle v. State*, 367 S.W.3d 746, 757 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).  We first determine whether error exists.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Rolle*, 367 S.W.3d at 757.  If error exists, we then evaluate the harm caused by that error.  *Ngo*, 175 S.W.3d at 743; *Rolle*, 367 S.W.3d at 757.  The degree of harm required for reversal depends on whether the error was preserved in the trial court.  When error is preserved in the trial court by timely objection, the record must show only "some harm."  *Rolle*, 367 S.W.3d at 757.  If the error was not objected to, then it must be "fundamental error" and requires reversal only if it was so egregious and created such harm that the defendant has not had a fair and impartial trial.  *Id.*

---

[1] Tex. Penal Code § 29.03(a)(1) (Vernon 2011).

[2] Tex. Penal Code § 29.03(a)(2) (Vernon 2011).

An egregious harm determination must be based on a finding of actual rather than theoretical harm. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). Actual harm is difficult to prove and depends on the facts of each particular case. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). A reviewing court considers charge error in the context of (1) the entire charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.*

The appellant did not object to the jury charge below. Therefore, we apply the egregious harm standard. *See Rolle*, 367 S.W.3d at 757.

The appellant contends that he was egregiously harmed because "serious, unanswered questions about what facts the jury accepted and rejected" compounded the charge error and deprived him of his valuable right to a unanimous verdict.

## A.     The Entire Jury Charge

The copy of the jury charge included in this record has several handwritten notations in the margins as well as some underlining. Within the instructions on capital murder, several passages on intent are underlined; within the instructions on aggravated robbery, only one passage contains underlining.

> If you find from the evidence beyond a reasonable doubt that [the appellant] and Marcus Roberson and/or Edward Lacy entered into an agreement to commit the felony offense of robbery of Ontonio Cooper, and pursuant to that agreement, if any, they did carry out their conspiracy and that in Harris County, Texas, on or about the 14th day of July, 2010, while in the course of committing such robbery of Ontonio Cooper, Marcus Roberson and/or Edward Lacy <u>threatened or placed Ontonio Cooper in fear of imminent bodily injury or death by</u>

4

> using or exhibiting a deadly weapon, namely a firearm, and said offense was committed in furtherance of the conspiracy and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy, then you will find [the appellant] guilty of aggravated robbery.

According to the appellant, this underlining "indicates that there may have been a disagreement among jurors on whether Cooper was intentionally killed or merely threatened with a deadly weapon." Nothing in the record explains why the notations were made, who made them, or what they signify. Even assuming that these notes were made by the jury, this court has previously refused to engage in the "pure speculation" of interpreting juror underlining. *See Bolden v. State*, No. 14-96-00319-CR, 1998 WL 255170, at *5 (Tex. App.—Houston [14th Dist.] May 21, 1998, pet. ref'd) (not designated for publication). We see no reason here to depart from this approach; the underlining does not compound the charge error for purposes of an *Almanza* analysis. *See id.*; *see also Chapman v. State*, 859 S.W.2d 509, 514 (Tex. App.—Houston [1st Dist.] 1993) ("The record contains no indication as to who underscored the lines. We will not accept as fact appellant's assertions in his appellate brief, which the State disputes as speculative, and which are not supported by the record."), *rev'd on other grounds*, 921 S.W.2d 694 (Tex. Crim. App. 1996).

Unanimity is mentioned once in the 17-page charge, in the boilerplate section regarding the selection of the jury foreman:

> After you retire to the jury room, you should select one of your members as your foreman. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify your verdict by using the appropriate form attached hereto and signing the name as Foreman.

This instruction does not cure the charge error.  *See Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); *Marinos v. State*, 186 S.W.3d 167, 175 (Tex. App.— Austin 2006, pet. ref'd).

We note, however, that the portion of the jury charge at issue here is not directly related to any defensive theory raised by the evidence, nor does it affirmatively misstate the State's burden of proof.  *See Villareal v. State*, No. 04-11-007771-CR, __ S.W.3d __, 2012 WL 6028981, at *7 (Tex. App.—San Antonio Dec. 5, 2012, no pet.) ("Without the presumption of reasonableness instruction, Villareal's only defense was significantly undermined."); *State v. Sanchez*, No. 08-11-00380-CR, __ S.W.3d __, 2012 WL 4910163, at *4 (Tex. App.—El Paso Oct. 17, 2012), pet. struck by No. PD-1656-12, 2013 WL 458167 (Tex. Crim. App., Feb. 6, 2013) (Charge defining aggravated sexual assault "without reference to the aggravating element that [the complainant] feared her death was imminent" omitted "the critical portions of the charge.").

We conclude that the jury charge weighs only slightly in favor of concluding that the appellant has suffered egregious harm.  *See Hayes v. State*, 265 S.W.3d 673, 692 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (concluding the trial court's failure to categorize "delivery" as "constructive delivery" in one portion of the jury charge had small effect on *Almanza* analysis).

**B.      The State of the Evidence**

The second factor of the *Almanza* analysis requires a determination of whether the jury charge error related to a contested issue.  *Hutch*, 922 S.W.2d at 173.

The appellant was indicted and tried for capital murder, and he did not dispute the fact of Cooper's death.  Neither the appellant nor the State asserted that

6

Cooper had been threatened before he was shot four times; the appellant's trial strategy focused on attacking the sufficiency of the evidence linking the appellant to Cooper's death. On this record, the jury charge seems to be the first time the use or exhibition of a deadly weapon as an aggravating factor is discussed. During trial proceedings, the evidence of Cooper's death was undisputed, uncontradicted, and seemed to have been taken as a "given" by the parties. *See Kucha v. State*, 686 S.W.2d 154, 156 (Tex. Crim. App. 1985).

We conclude that the state of the evidence weighs against egregious harm.

### C.    Jury Argument

The third factor of *Almanza* harm analysis is the jury argument. *Hutch*, 922 S.W.2d at 173; *Toney v. State*, 3 S.W.3d 199, 207 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Jury argument alone is never a controlling factor in an *Almanza* harm analysis. *Hutch*, 922 S.W.2d at 174; *Toney*, 3 S.W.3d at 207.

Here, the omission in the jury charge was not argued to the jury. Both the appellant and the State focused their arguments on the credibility of witnesses and the strength of other evidence linking the appellant to Cooper's death. Neither side argued that the appellant had threatened Cooper.

We conclude that the jury argument factor weighs against egregious harm.

### D.    The Record as a Whole

The appellant argues that, when the record is examined as a whole, "warts and all," it supports a finding of egregious harm. He argues:

> Lacy testified that plans to rob Cooper by merely threatening him with a firearm were discussed, that [the appellant] suggested shooting Cooper and Jett, and that Lacy and Roberson wanted no part in a murder. Roberson denied that any plans were discussed. [Witness]

7

> Breanna Morris was unable to identify the shooter. [Witness Alicia] Randel's testimony does not indicate which person shot Cooper or Jett. Finally, Jett originally identified Lacy as the shooter. There are facts sufficient to support a verdict of aggravated robbery "by threats made using a deadly weapon," and a verdict of aggravated robbery "by serious bodily injury." [The appellant's] liability for the two offenses may or may not have been mutually exclusive, and this Court cannot determine from the [s]tate of the evidence whether the jury favored either or both theories of culpability. Therefore, the improper charge in this case resulted in egregious harm to [the appellant].

Even if the jury were to believe all of the facts as alleged by the appellant, nothing in the record supports a finding that the appellant or his codefendants ever threatened Cooper. Accordingly, we reject the contention that a unanimity instruction would have affected the jury's decision.

We conclude that the appellant has failed to demonstrate egregious harm, and we overrule his first issue.

## II.    Evidence Concerning the Guns

In his second issue, the appellant argues that the trial court erred by admitting evidence that the appellant's girlfriend had purchased a silver .38 caliber revolver and a black 9mm automatic pistol shortly before Cooper's death. According to the appellant, those weapons were unconnected with Cooper's death; therefore, evidence relating to them was irrelevant and inadmissible. Alternatively, the appellant argues that, if evidence concerning the guns was relevant, its probative value was substantially outweighed by the danger of unfair prejudice. We will address each of these arguments in turn.

### A. Relevance

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. "Evidence which is not relevant is inadmissible." Tex. R. Evid. 402. Questions of relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion. *Goff v. State*, 931 S.W.2d 537, 553 (Tex. Crim. App. 1996).

Though a trial court has substantial discretion, it can abuse its discretion if its rulings are outside that zone within which reasonable persons might disagree. *Nickerson v. State*, 312 S.W.3d 250, 255 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A trial court's ruling on the admissibility of evidence will be upheld if the record reasonably supports the ruling. *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

The trial court admitted evidence that the appellant's girlfriend purchased two different guns — a silver .38 caliber revolver and a black 9mm semiautomatic pistol — shortly before Cooper's death and that the appellant had been present for both of those purchases. The appellant objected to this evidence on the grounds that it was irrelevant and that its probative value was substantially outweighed by the danger of unfair prejudice. The trial court overruled the appellant's objections.

On appeal, the appellant argues that the only firearm connected to Cooper's death was a black .38 caliber gun. This assertion is based on the appellant's contentions that (1) undisputed ballistics evidence showed that a .38 caliber gun was used to kill Cooper and (2) witness Alicia Randel testified that she saw the

9

appellant with a black gun immediately after the shooting. Because neither gun purchased by the appellant's girlfriend matches this description, the appellant argues that neither gun was relevant to the State's prosecution.

Randel's testimony with respect to seeing a black gun is not as definitive as the appellant suggests. Randel testified that she did not see the shooting actually occur, and her testimony about the gun's color was equivocal. The following exchange occurred during cross-examination:

> Q. [Defense counsel] And [the appellant] was putting something in [a backpack], which you thought was a gun?
> A. [Randel] Yes.
> Q. But you couldn't tell what color it was.
> A. I don't remember. I believe it was black though.
> Q. Okay. All right. And why is it that you believe it was black? I'm not going to argue with you because I don't know what you saw. I'm just asking.
> A. I just believe it was black.
> Q. Okay. So, when you say you don't remember, you believe it was black. You're not positive, but your best guess is it was black?
> A. Yes, sir.
> Q. Do you know that guns sometimes are silver? Sometimes they're like chrome.
> A. Yes.
> Q. Was it a chrome gun?
> A. I don't know.
> Q. Okay. Well, there's a lot of difference between a chrome gun and a black gun, right?
> A. Yes.
> Q. And your best recollection is it was a black gun?
> A. I believe so.

Further, one of the appellant's codefendants testified that the appellant had used a silver gun.

Lacy testified that the appellant was carrying a "[c]hrome .38, snub-nose revolver" on the day Cooper was killed; the appellant discounts this testimony as "provably false" because Lacy testified that he had seen the appellant with that gun several different times. The appellant argues that "Lacy could not possibly have seen [the appellant] carrying around the .38 revolver on multiple occasions because [the appellant's girlfriend] purchased the revolver only two days before the July 14, 2010 shooting." The appellant does not address the possibility that Lacy had seen the appellant multiple times within that two-day period.

We conclude that the trial court did not abuse its discretion by implicitly finding that the evidence concerning the guns was relevant.

### B.    Unfair Prejudice

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. When Rule 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, it simply means that trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence. *Moreno v. State*, 22 S.W.3d 482, 487 (Tex. Crim. App. 1999). In reviewing the trial court's balancing test determination, a reviewing court is to reverse a trial court's judgment rarely and only after a clear abuse of discretion. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *State v. Mechler*, 123 S.W.3d 449, 454 (Tex. App.—Houston [14th Dist.] 2003), *aff'd*, 153 S.W.3d 435 (Tex. Crim. App. 2005).

11

"Unfair prejudice" refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *Id.* at 880. Unfair prejudice does not arise from the mere fact that evidence injures a party's case. *Id.* at 883. Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it. *Id.* Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence. *Id.*

The inherent probative force of the evidence concerning the guns was its tendency to show that the appellant was the shooter. The appellant argues that the evidence is unfairly prejudicial for the same reason — its tendency to show that the appellant was the shooter. Though this evidence may be prejudicial to the appellant's case, it is not ***unfairly*** prejudicial.

We overrule the appellant's second issue.

## CONCLUSION

Having overruled the appellant's issues on appeal, we affirm the judgment of the trial court.


/s/    William J. Boyce
       Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).